[No. 547.    September 3, 1894.]

CHARLES M. CONKLIN, PLAINTIFF IN ERROR, v. WILLIAM P. CUNNINGHAM, DEFENDANT IN ERROR.

PUBLIC OFFICE—REMOVAL OF SHERIFF BY GOVERNOR, AND APPOINTMENT TO FILL VACANCY—MANDAMUS BY APPOINTEE TO COMPEL DELIVERY OF BOOKS, ETC., OF SHERIFF'S OFFICE—ANSWER—ESTOPPEL.—In a proceeding by mandamus, by one claiming to be sheriff and ex officio collector of Santa Fe county, under an appointment by the governor, to fill a vacancy created by the removal of the defendant from said office by the governor, pursuant to authority vested in him under section 27, chapter 25, of the Session Laws of 1891, to compel the defendant to turn over to the petitioner all books, papers, property, and prisoners pertaining to said office, where it appeared from respondent's answer that he had obtained an order from the district court of said county, in the nature of quo warranto, upon the petitioner, to determine the title to said office, it was an admission, by the

respondent, that he had been deprived of the possession of said office by the order of the governor, and that the possession was in the petitioner, by that appointment, at the time of the institution of the proceeding by quo warranto; and respondent was precluded thereby from denying said possession, and endeavoring to determine said title in such mandamus proceeding.

ID.—PRIMA FACIE TITLE—WITHHOLDING PROPERTY OF OFFICE FROM DE FACTO OFFICER BY FORMER OCCUPANT—REMEDY.—Mandamus is the proper remedy against the former occupant of an office by a de facto officer having a prima facie right to obtain possession of the property of the office; and a pretended retention of the office by such former occupant will not justify him in withholding such property, to compel such officer possessing the prima facie title to resort to a proceeding in the nature of quo warranto.

ID.—MANDAMUS—ISSUES OF LAW—PLEADINGS.—The legal title to the office not being involved in the proceeding by mandamus, issues of law upon which the title to office depends can not be determined in such proceeding. The return of respondent to the alternative writ must be limited to the denial of the statements of alleged facts contained therein, and traverses in pleadings can not properly create other issues than those of fact. Nor can conclusions of law resulting from such statements in the alternative writ be controverted by respondent in his answer. Compiled Laws, 1884, sec. 2000.

ID.—POWER OF GOVERNOR TO REMOVE SHERIFF, AND APPOINT HIS SUCCESSOR—MANDAMUS—PRESUMPTION.—In such proceeding, the conclusive presumption is that the governor acted within the limits of the authority vested in him by section 27, chapter 25, Session Laws, 1891. That he was authorized by this section of the statute, under which he acted, to remove for causes therein specified, and to fill the vacancy by appointment, and issue his commission to the appointee, and that the respondent ceased to be sheriff, and the petitioner became, prima facie, such officer, by the executive order, are equally conclusive presumptions of law in such proceeding, and can not be controverted, except in a proceeding in the nature of quo warranto to contest the legal title to the office.

ID.—APPOINTMENT OF SHERIFF BY GOVERNOR, TAKES EFFECT WHEN— LEGAL EFFECT OF APPOINTMENT.—An appointment to the office of sheriff by the governor is complete on the delivery of the commission, and gives the appointee prima facie title thereto.

ID.—REMOVAL OF SHERIFF BY GOVERNOR—NOTICE OF DEFAULT.—A prior notice of default is not necessary to the removal by the governor of the sheriff for a shortage in his accounts, under section 27 of the statute. That section is mandatory, and directs summary action by the executive; and such action is not judicial, and does not require due process of law.

ID.—MANDAMUS—PREVIOUS DEMAND FOR BOOKS, ETC.—In such proceeding where it appeared conclusively from the conduct of the respondent that a demand for the books, and other property of the office, would have been met with a refusal, no previous demand was necessary.

ERROR, from a judgment granting the petitioner a peremptory writ of mandamus, to the First Judicial District Court, Santa Fe County. Affirmed; FREEMAN, J., dissenting. Also order entered in injunction case number 553, referred to in the opinion of the court, affirming the judgment of the court below dissolving the injunction, it having been stipulated between the counsel in that case that it should be determined by the conclusions of the court in the mandamus proceeding.

The facts are stated in the opinion of the court.

EDWARD L. BARTLETT, T. B. CATRON, and CHARLES A. SPIESS for plaintiff in error.

The statute authorizes the removal of the collector when he shall fail to pay over all school moneys collected by him within thirty days after the tenth day of each month. This is a condition precedent to his removal, and must be determined at a hearing of which the collector must be given notice. Foster v. Kansas, 112 U. S. 206; Kennard v. Louisiana, 92 U. S. 480; Hurtado v. California, 110 U. S. 535; State v. Corneall, 10 Ark. 162.

Waiving the proposition that mandamus could not have been resorted to to oust plaintiff in error from the possession of his office, the court erred in refusing to pass upon the issues of fact raised by the pleadings, and it was clearly error for the court to overrule plaintiff in error's motion for a jury to try the issues of fact. People v. Board of Education, 127 Ill. 613; State v. Burnsville, 97 Ind. 416; Burnsville v. State, 119 Id.

382; People v. Board of Police, 107 N. Y. 235; Frey v. Michie, 68 Mich. 323; Thompson v. United States, 103 U. S. 480; Cooms v. McCandler, 129 Pa. St. 492; Savannah v. State, 4 Ga. 26; Noble Co. Com'rs v. Hunt, 33 Ohio St. 169.

H. L. Warren for defendant in error.

A denial of fact must be direct, and not by a negative pregnant, or argumentative, and must not amount to denial of matter of law. 1 Danl. Ch. Pl. & Pr., sec. 726; 1 Chitty, Plead., p. 260; High's Ex. Legal Rem., 466–470, 472, and 474, 476–478.

Different offenses alleged must be consistent with each other. High, Ex. Legal Rem., sec. 560.

Mandamus is the proper remedy in this case. 14 Am. and Eng. Encyclopedia of Law (Mandamus), pp. 107–147; 44 Iowa, 340; In re Delgado, 140 U. S. 59; High's Ex. Legal Rem., sec. 73, et seq., and cases cited in note.

The courts will indulge the presumption that the governor has acted rightly until the contrary is shown. High, sec. 464; Commonwealth v. Frazier, 4 Mon. 513.

The court not having jurisdiction in mandamus to try and determine the ultimate title to the office, there only remains to determine upon the pleadings who is the actual incumbent of the office, and as such prima facie entitled, upon the facts appearing, to the insignia, public books, and property pertaining to the office, leaving the other party to his remedy by quo warranto. Delehanty v. Warner, 75 Ill. 186; State v. Johnson, 30 Fla. 434; Wennor v. Smith, 9 Pac. Rep. (Utah) 297; Plowman v. Thornton, 52 Ala. 559; Bright's Lead. Cas. on Elections, 286; State v. Howard Co., 41 Mo. 247; Mechem, secs. 478–995; cases cited under sec. 73, High's Ex. Legal Rem.

SMITH, C. J.—This was an action brought in the district court of Santa Fe county by the petitioner, William P. Cunningham, for the writ of mandamus to compel the appellant and plaintiff in error to turn over to the appellee all the books, papers, property, and prisoners pertaining to the office of sheriff and ex officio collector of the county of Santa Fe, the said petitioner alleging that on the twenty-seventh day of June, 1893, Charles M. Conklin was summarily removed from the office of sheriff of said county by the governor of the territory, and the said Cunningham appointed sheriff of the said county to fill the vacancy caused by the removal of the said Conklin; that the order of removal was served on said Conklin on the twenty-eighth day of June, 1893; that on the thirtieth day of June, 1893, the said Cunningham duly qualified as such sheriff by filing a bond in the district court of Santa Fe, and taking the oath of office as required by law. The said petitioner further shows that said Conklin refused to deliver to him, and still refuses to deliver to him, the books, property, etc., pertaining to the office of said sheriff, and that he thereupon prayed the district court for the said county for an alternative writ of mandamus, commanding the said Conklin to turn over the said property to him, and that the writ was accordingly allowed by said court, returnable the seventh day of July, 1893, and served upon the said Conklin the fifth day of said month. The respondent, Charles M. Conklin, filed his answer to such writ on the seventh day of July, 1893, alleging that he was duly elected sheriff of Santa Fe county, November 8, 1892, to serve for two years from January 1, 1893; qualified and acted as such sheriff; denied that he was summarily removed therefrom by an order of the governor of the territory; denied the right of the governor to remove him, and to appoint Cunningham in his place; denied that the said Cunningham was the sheriff of said

county; denied that said Cunningham was entitled to the possession of the said office of sheriff, or of the books or any property pertaining to the same, or that it was his duty to deliver the same to the said Cunningham.

It appears from the petition (by the order of the governor, embraced therein) that the governor acted under and pursuant to authority conferred upon him by section 27, chapter 25, of the legislative assembly of the territory, passed at the twenty-ninth session thereof, and that it was shown to him, by satisfactory proof, that Charles M. Conklin, sheriff and ex officio collector of the county of Santa Fe, had collected various sums of money belonging to the school fund, and failed to pay over the same, and that thereupon, by virtue of the authority so conferred, and in fulfillment of the duty imposed upon him, he removed the said Conklin from the office of sheriff of said county on the twenty-seventh day of June, 1893. It further appears by said petition (from the order of the governor contained therein) that the said governor, on the twenty-seventh day of June, 1893, appointed the said Cunningham, sheriff and ex officio collector of the county of Santa Fe, to fill the vacancy occasioned by the removal of Charles M. Conklin from said office; and it is shown by the respondent, in his return, that the said Cunningham gave bond as such official, in the district court of the said county, on the thirtieth day of June. Respondent denies that said section 27 of chapter 25, before referred to, was in full effect in this territory on the twenty-seventh day of June, 1893, or that it was shown by satisfactory proof that he, the said Conklin, had collected any money belonging to the school fund of said county, and failed to pay over the same, within the limitation specified in said section. Respondent alleges that no notice of his alleged default was ever given; that the governor was not authorized to inquire

into the same, and that such charges, if made against him, should have been fully investigated in the district court for said county.    Respondent further represents that on the thirtieth of June, 1893, he obtained an injunction from the district court for said county, restraining the said Cunningham from entering or attempting to enter upon the duties of the office of sheriff of said county, or in any manner interfering with him (respondent) in the discharge of the same.    Respondent further shows that on the third day of July, 1893, he obtained an order upon the said Cunningham from the district court of said county, returnable the tenth day of July, 1893, to show cause why a writ of quo warranto should not be issued against him, to determine the title to the said office of sheriff of said county, as between him (the respondent) and the said Cunningham, the said writ being declared by the respondent "the proper and legal mode for determining the same," and that the said order was duly served upon the said Cunningham.    Respondent thereupon declines to comply with the requirements of the said alternative writ of mandamus, except to show cause, and submits that the said writ should not be made peremptory against him.

It appears from the record in the injunction proceeding that the injunction therein granted was dissolved on the eighth day of July, 1893.    The information in the nature of quo warranto referred to by respondent is now pending and undetermined in the district court of the First judicial district.  On the seventh day of July the motion of respondent to quash the service and return of said alternative writ upon him was overruled, to which order respondent excepted.    On the eighth day of July, 1893, respondent moved the court for a jury to try the issues of fact joined in the cause, upon the allegations contained in the writ and the answer thereto, which said motion the court

overruled, and the respondent then and there excepted to such judgment. On the eighth day of July, 1893, the relator, Cunningham, moved for a peremptory writ of mandamus upon the alternative writ, for the reason that no material issues of fact were joined, and only questions of law were raised, which said motion was resisted by respondent; but the court granted the same, ordering the said respondent to turn over to the said petitioner all books and papers pertaining to the office of said sheriff of said county, and also the jail thereof, by July 12, 1893, to which action of the court the respondent excepted. Respondent, then and there, on the said eighth day of July, 1893, moved the court for a new trial, and also for an arrest of judgment, which motion the court overruled, and to which judgment respondent then and there objected and excepted, and took an appeal to this court. On the eleventh day of July, 1893, the peremptory writ of mandamus was issued, commanding said Conklin to surrender and deliver to said Cunningham all books, papers, and property pertaining to the sheriffalty of the county of Santa Fe, on or before the twelfth day of July, 1893, which order was duly complied with on the said twelfth day of July, 1893.

The plaintiff in error assigns the following as error in the court below: First. In denying the motion of plaintiff in error to quash the return and service of the alternative writ of mandamus, upon the several grounds in said motion stated. Second. In denying the motion of plaintiff in error for a jury, upon the several grounds in said motion stated. Third. In granting the motion of defendant in error for a peremptory writ of mandamus, upon the several grounds therein stated. Fourth. In granting a peremptory writ of mandamus. Fifth. In granting said peremptory writ of mandamus, it appearing from the record that no demand had been made upon said Charles M. Conklin for the office

in question.  Sixth.  In denying the motion of plaintiff in error for a new trial and arrest of judgment, upon the several grounds therein stated.

Before considering these alleged errors, we will present the attitude in which the plaintiff in error appears by the repugnant allegations of his return.  Respondent denied in his answer that he was summarily removed from the office of sheriff of said county on the twenty-seventh day of June, 1893; denied that the relator, Cunningham, was appointed to the said office on the twenty-seventh day of June, 1893, and was in possession of said office with any right or title, and claims that he (the respondent) was in possession of said office and discharging the duties thereof, on the seventh day of July, 1893, in disregard of the order of the executive of the territory removing him, and appointing W. P. Cunningham.  Respondent thereafter, in said answer, shows that on the third day of July, 1893, he obtained from the district court for the county of Santa Fe an order in the nature of quo warranto upon the petitioner, Cunningham, to determine the title to the office of sheriff of said county as between him and the said Cunningham.  It is conclusive that this respondent, by recourse to the writ of quo warranto on the third day of July, 1893, to establish the title to the office of sheriff, as against Cunningham, admitted that he had been deprived of the possession of said office by the order of the governor removing him, and that it was in Cunningham, by the appointment of the governor, at the date of the institution of the proceedings in quo warranto.  Quo warranto, in its nature, involves a possession and user of an office by another than the relator, for without such foundation such a writ should not be issued, and can not be maintained.  Conklin, in his application for the

REMOVAL of sheriff by governor, and appointment to fill vacancy: mandamus by appointee to compel delivery of books, etc.: answer: estoppel.

writ, must have alleged—did allege—that Cunningham was de facto in charge of the said sheriffalty, or the order in the nature of quo warranto upon Cunningham could not have been granted. It is palpable that the denial in this proceeding by mandamus of the effect of the orders of the executive, the one removing him, and the other appointing Cunningham in his place, is inconsistent with the admission of their operation in the quo warranto information. In the one the possession of said office by Cunningham is denied; in the other, such possession is an essential admission. The operation of law resulting from the facts alleged in the alternative writ of mandamus is traversed by him as respondent (though such pleading is irregular and defective), but is asserted by him as petitioner in the application for a writ of quo warranto. If, on the third day of July, 1893, Conklin admitted in the quo warranto action that Cunningham was in possession of the sheriffalty of said county, and he instituted said quo warranto, "the legal and proper mode to try the title to said office," he is precluded from denying said possession on the seventh day of July, 1893, and endeavoring to determine said title in this proceeding by mandamus. Cunningham was the de facto sheriff of said county, in charge of the office, on the third day of July, 1893, according to the representation of Conklin in the proceeding to determine the title to the office, and he can not be heard to contradict himself on the seventh day of July in a collateral proissue, not involving the title. The position of the respondent in the two actions is irreconcilable, and so repugnant is the one to the other—so inconsistent are these several defenses in the return with each other—that the said return could have with propriety been quashed for this reason alone, and the peremptory writ awarded.

Mandamus is a summary and specific remedy to enforce the performance of a duty incident to an ex-

PRIMA facie title: withholding property of office from de facto officer by former occupant: remedy. isting right, in cases in which, without such appropriate redress, serious injustice would occur. It is a recognized process to maintain the prima facie title to an office, and it is not within its purview to determine the legality of such claim. It affords the proper remedy against an exofficial by a de facto officer having prima facie right to obtain possession of the books, papers, etc., the property of the office, and a pretended retention of the office by the late occupant will not justify him in withholding such property, with a view to compel resort to information in the nature of a quo warranto by a party possessing the prima facie title. Rex v. Clapham, 1 Wils. 305; People v. Kilduff, 15 Ill. 492; People v. Head, 25 Ill. 325; Crow v. Lambert, 10 Minn. 369. It is the inadequacy, and not the mere absence, of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ; and it is not excluded by other legal remedies, which are not adequate to secure the specific relief needed, nor by the existence of a specific remedy in equity. 14 Am. and Eng. Encyclopedia Law, ch. 6, p. 102, and authorities cited in note 4. In Attorney General v. Boston, 123 Mass. 460, it is said that when the officers against whom the writ is sought have clearly manifested a determination to disregard their duty, by refusing to perform the acts in question, the court is not obliged to delay until the evil is done before granting the relief. See, also, Mayor, etc., of Brunswick v. Dure, 59 Ga. 803. As the legal title to the office is not involved in the action of mandamus, issues of law upon which the title to office depends can not be adjudicated in such proceedings. The apparent right subsisting in the petitioner (determined by the court in the issuance of the alter-

MANDAMUS: issues of law: pleadings. native writ), the return of the respondent must be restricted to the denial of the statements of alleged facts contained in the

alternative writ, and traverses in pleadings can not legitimately create other issues than those of fact. A traverse of the law, being an exception to the sufficiency of the law, is vicious. Nor can conclusions of law resulting from statements of alleged facts in the alternative mandamus be denied or controverted by respondent in his answer. Facts, not inferences from facts, or arguments thereon, should be alleged in the return with distinctness and precision, and failure to meet this requirement so impeaches such pleading that it should be abated for insufficiency.

By section 2000 of the Compiled Laws of New Mexico, the pleadings in the proceedings by mandamus are limited to the writ (alternative) and answer, and they should be construed as pleadings in a civil action, and the issues thereby joined shall be tried and further proceedings had in the same manner as in a civil action. It is shown by the writ that the governor of the territory of New Mexico, on the twenty-seventh day of June, 1893, issued an order removing Charles M. Conklin from the office of sheriff of the county of Santa Fe, by virtue of authority vested in him by statute duly enacted by the legislature of the territory, for cause shown by proof satisfactory to him; that on the same day he appointed and commissioned William P. Cunningham to fill the vacancy occasioned by such removal; that on June 30, 1893, the said Cunningham executed a bond as sheriff of said county, which was approved by the district court of said county, and duly filed; that he then and there took the oath of office; and that the said oath was incorporated in the bond. It is alleged in said writ that Cunningham, by virtue of his appointment by the governor, became the sheriff of the county of Santa Fe, entitled to the office and the books and property pertaining to the same; that it was the duty of Charles M. Conklin to surrender and deliver to Cunningham, as his successor, the said prop-

erty, of which he, the said Conklin, had possession, and which he had omitted and refused, and continued to omit and refuse, to surrender to the said Cunningham. Respondent does not deny that the orders of removal and appointment were issued by the executive as alleged, but affirms, substantially, that the authority for such action did not exist, and that it was inoperative to create a vacancy, or to fill it; does not deny that Cunningham gave bond as stated, and took the oath of office subscribed thereon, but avers, in effect, that he did not acquire any title to the office, or any right to the possession of the property pertaining to the same; does not deny that Cunningham received from the governor a commission as sheriff of said county, but argues that it was not a legal muniment conferring any rights upon the said Cunningham. Respondent denies that it was ever shown by satisfactory proof to the governor that he had ever collected various sums of money belonging to the school fund, and failed to pay over the same within the time prescribed by the section of the statute under which his said pretended removal was attempted, and alleges that he has never at any time held or kept back any money belonging to the school fund beyond the time that the same was due and payable. Respondent alleges that no charge was made against him that he had so collected and failed to turn over any school fund; that no demand was made upon him for the office, and the books and property of the office, of sheriff of the county of Santa Fe, and that, for the reasons recited in his return, he declines to comply with the requirements of the alternative writ to deliver the said property to the said Cunningham.

The foregoing allegations of the respondent are, in effect, though not in terms, more affirmative than negative, in that they admit substantially the acts of the executive and petitioner alleged in the writ, and dispute their legal operation,—their effect by construc-

tion of law. They are argumentative, and conse-
quently faulty. To affirm that the governor was with-
out authority under the statute is to argue that the
statute is not in esse now. To affirm that Cunning-
ham is not prima facie entitled to the office of sheriff is
to argue that his appointment by the governor was in-
valid. Admissions accompanied with suggestions that
the petitioner derives no specific rights from such facts
and arguments.

Whether the governor was empowered by · section
27 of chapter 25 of the acts of the legislative assembly,
passed at the twenty-ninth session thereof, to remove
the respondent, Conklin, from, and appoint the peti-
tioner to, the office of sheriff of the county of Santa
Fe, involves a construction of said section and, it may
be, of other statutes. Whether the effect of the said
executive orders was to create a vacancy, and substi-
tute Cunningham for Conklin; whether Cunningham
became the sheriff of said county upon giving his bond
and taking the oath of office as such; whether it be-
came the duty of Conklin to deliver the property of
the sheriffalty of Santa Fe county to Cunningham;
whether the said Cunningham was entitled to the pos-
session of the said books and other property; whether
Conklin was entitled to notice of the alleged deficiency
and the contemplated purpose of the governor to inves-
tigate his accounts; whether demand should have been
made by Cunningham upon Conklin for the books and
other property incident to the said sheriffalty; whether
Cunningham possessed the qualifications for said sher-
iffalty,—are problems for judicial discussion, not issues
of fact for the consideration of a jury; and, further,
they involve the legal title, and are not germane, ex-
cept in a proceeding by quo warranto. And whether
the said Conklin did in fact collect school funds, and
fail to turn them over in accordance with the statutory
provisions, is an issue, the adjudication of which would

determine the title to the office in question, and must therefore be remanded for consideration to the proceedings in quo warranto, "the only legal method of disposing of contentions as to the de jure title to public offices."

Whether the right of trial by jury in proceedings by mandamus prevails in this territory has never been passed upon by this court, but it does not appear to have been the practice to call into requisition such a tribunal. No enactments determine the doubt, unless it shall be construed that section 2000 of the Compiled Laws, in directing that the issues joined by the alternative writ and the answer shall be tried in the same manner as in a civil action, solves it in favor of a jury. In Connecticut it is held that the constitutional provisions for jury trial have no application to proceedings in mandamus, and in Montana it has been declared that such proceedings are not ordinary actions at common law, and that the relator is not entitled, as a matter of right, to a trial by jury, and that it rests in the sound discretion of the court to award such trial. In Frey v. Michie, 68 Mich. 323, it is declared that trial by jury is an absolute right in a quo warranto case, and may be granted in mandamus proceedings, yet the trial, in many respects, is not like a common law jury trial on an issue upon the information and regular pleadings.

That the executive acted within the limits of his authority is a conclusive presumption in this proceeding; that he was authorized by the statute to remove POWER of governor for causes specified in the section under to remove sheriff, appoint his which he acted, and to appoint to the successor: mandamus: vacancy, and issue his commission, are presumption. not less indisputable legal conclusions in this action; and that Conklin ceased to be sheriff by the one executive order, and Cunningham became, prima facie, such official, by the other, is the law's

operation, so pronounced that it can not be contro-
verted, except in an action contesting the legal title to the
office. The three departments of our government,—
legislative, executive and judicial,—though coordinate,
are distinct, and, within their respective lines, separate
and independent, and, within their prescribed scope,
absolute. In the exercise of the powers confided to his
discretion and in the performance of the duties impos-
ed upon him, the executive is independent of the judi-
ciary; and presumptively his acts are within the limita-
tions of his authority, and must be recognized by the
judicial tribunals. Prima facie, the order of removal
in this case was a legal exercise of executive authority;
and the appointment of Cunningham constituted a
commission that was evidence, prima facie, that he
was lawfully entitled to the sheriffalty, and imposed
upon the contestant the burden of showing a better
title by an action in the nature of quo warranto. 25 Ill.
325; 41 Mo. 247; 9 Pac. Rep. 297; 52 Ala. 559; 14 Am.
and Eng. Encyclopedia of Law, cl. 3, p. 143, and cita-
tions there made.

An appointment to office by the executive is com-
plete upon the delivery of the commission. Marbury
v. Madison, 1 Cranch (U. S.); Wetherbee v. Casneau,
20 Cal. 503. We think that, when the governor ap-
pointed and commissioned the plaintiff,
he gave him prima facie title to the office.
25 Ill. 325. The commission of the gov-
ernor, when issued, must be taken at least
as prima facie evidence that the person holding it is
lawfully entitled to the office. 41 Mo. 247. The pow-
ers of a governor are executive, not judicial, and they
must be exercised promptly, to be effective. Notice to
a defaulter is invitation to repair defi-
ciency with a view to retention of office.
To afford opportunity to make good delin-
quency is to protect the violator of a trust, and to sup-

APPOINTMENT of
sheriff by
governor, takes
effect when:
legal effect of.

REMOVAL of
sheriff by
governor: notice
of default.

plant summary action by judicial investigation. The impending penalty of removal is to deter breach in office, and to encourage fidelity and promptness in the discharge of its duties. Trial is not an executive function, and its assumption would be the emasculation of executive efficiency. The section under which the governor proceeded is mandatory, and directs summary action, quick execution, and that it is impracticable to attain such a result by the dilatory process of charges and defenses is manifest. A summary end by prolix means is an impossible achievement. So inconceivable is the rapidity in the redress of wrongs by tedious and vexatious remedies, that it is not legitimate to impute such contradiction to the legislature, unless it shall appear in express terms, and the omission of any requirement of notice from the provisions of section 27 must be regarded as the expression of an intention that notice should not be an essential to its enforcement. The examination of the accounts of the sheriff, and the finding that he has not accounted for moneys of the county as required by law, and that he was in arrears, with the county, and removing him from office, is not judicial action, and does not require due process of law. But whether notice to the respondent was a legal requirement is essentially an issue for judicial inquiry and determination. Donahue v. County of Will et al., 100 Ill. 94.

Whether, previous to the application for the writ, there should have been any call by the petitioner upon the respondent for the books and other property, is exclusively a question of law. It is well settled that whenever it can be conclusively implied, from the conduct of him against whom the writ is sought, that there would be a refusal to comply, a literal demand is not required. Nor is it essential in cases affecting public officers or duties, omission or neglect under such circumstances

MANDAMUS: previous demand for books, etc.

being refusal. That demand upon respondent would have encountered his refusal is declared in his answer. 14 Am. and Eng. Encyclopedia of Law, p. 106, and authorities cited in notes; 44 Iowa, 340.

It is not deemed necessary to review the errors assigned by appellant more in detail, as the foregoing views in the enunciation of the principles that should prevail in proceedings of the nature of that under consideration are sufficiently comprehensive to dispose of them.

We are of the opinion that the peremptory writ of mandamus was properly awarded, and that W. P. Cunningham is entitled to the books and other property pertaining to the office of sheriff of Santa Fe county, and the judgment of the lower court is accordingly affirmed.

It having been stipulated between the counsel that the case number 553, being the injunction proceeding hereinbefore referred to, should be determined by the conclusions of the court in this action, it is hereby adjudged that an order be entered in said cause affirming the judgment of the lower court dissolving the said injunction on the eighth day of July, 1893.

COLLIER, FALL, and LAUGHLIN, JJ., concur.

(Sept. 4, 1894.)

FREEMAN, J. (dissenting).—Without going into a tedious recital of the history of this case, the whole question presented for our consideration may be set out as follows: At the last general election for county officers held in the county of Santa Fe, the plaintiff in error was elected sheriff of Santa Fe county. On the twenty-seventh day of June, 1893, he was summarily removed from said office by the governor. It is admitted that the plaintiff in error had no notice of the intention of the governor to make the removal, and no opportunity, therefore, to defend himself against the

charges of official misconduct. The plaintiff in error having refused to surrender the paraphernalia of the office, as it was alleged, an alternative writ of mandamus was served on him, requiring him to show cause why he should not be required to surrender the property, effects, and insignia of the office. To this writ he answered, stating that he had been duly elected, qualified, etc., as such sheriff; that is to say, he set up in full all of the facts which, taken together, constituted his title to the office of sheriff. He also denied that he had been guilty of any of the acts which would subject him to removal; that he had never received any notice of any charge against him; and denied, therefore, that he had been duly or legally removed from said office. On the trial of this issue in the court below, he demanded a jury, which was refused, the court holding that no issue of fact was presented by the pleadings; that, on the face of the petition and answer, it appeared that the governor had removed him from office; and that, as a conclusion of law, the relator was entitled to the peremptory writ, and it was ordered accordingly. From this order the respondent appeals in error to this court. Elaborate arguments have been made, and many authorities cited; but, in my opinion, the issue is confined to a very simple question, and a fair statement of the only controverted point will shed the strongest possible light on its solution.

The plaintiff in error insists that, possessing all of the qualifications required by law, and having been duly elected to the office of sheriff, and having qualified as such, he is entitled, as a matter of law, to retain the office until the end of his term, unless he should be guilty of some infraction of the law that would warrant his removal. This the defendant in error denies, and this is the issue of law that we are called upon to decide. The defendant in error insists that under the statute the governor is invested with the absolute

power of removal; that he can exercise this power summarily, and without notice to the officer to be removed; and that, having removed the incumbent, he can appoint his successor. He insists that the action of the governor in this behalf is conclusive, and can not, therefore, be inquired into; so far as the legal effect of the action of the governor is concerned, it is wholly immaterial whether the incumbent had been guilty of the causes assigned for his removal or not; that the recital in the executive order was conclusive against him, and could not be inquired into in this proceeding; that whether the charges made against him were true or false, that whether they were supported by affidavit or by mere rumor, or indeed whether any charges at all had been preferred, was a matter upon which he had no right to be heard by the governor, and a matter over which the courts have no jurisdiction; that the power of absolute removal, attendant upon which, and as a consequence of which, the punishment of disqualification forever after to hold office is vested solely in the governor, who may exercise this power arbitrarily, summarily, and without notice to the accused, and that such action is final and conclusive; that this action is so absolutely conclusive that, in an action by mandamus, brought by the governor's appointee, to compel the removed officer to turn over the property of the office, he can not be heard to object to the proceeding by which he has been ousted; that the absolute right of the governor to remove him without notice or hearing is so clear that a petition for writ of mandamus brought by him against the removed officer, and the answer thereto, raise no question of fact to be tried by a jury, and that, therefore, the power vested in the governor is not only absolute and final, when properly exercised, but that it is beyond the reach of inquiry in any form; that, notwithstanding the law provides for the election of the sheriffs of

the several counties by the qualified voters thereof, it is within the power of the governor to remove any sheriff of the territory, and appoint in each of the counties persons of his own selection; that all that is required to make these removals legal is the recital in the executive order that the officers have been guilty of certain violations of the law. It is sought to support this proposition by invoking the doctrine of presumption. It is insisted that, the governor having recited in his order that the sheriff had been guilty of acts which, under the statute, warrant his removal, we are to presume that such recital is true; that the action of the governor imports absolute verity; that a statute which authorizes the governor to remove the sheriff for causes therein set out is the equivalent of a statute which makes the tenure of the sheriff's office subject to the pleasure of the governor; that there is practically, and in legal effect, no difference between a statute which authorizes the governor to remove the officer for cause, and one which should authorize the removal of said officer at will; that in neither case can the action of the governor be inquired into; that, as against the presumption that the governor has done his duty, the presumption in favor of the sheriff, supplemented by his sworn answer, does not even present an issue of fact.

It is said that to undertake to inquire into the validity of the action of the governor is an unwarrantable intrusion upon the part of the judiciary upon the prerogatives of the executive. I deny the truth of this proposition. No such question, as one of courtesy, can arise in an inquiry of this character. This is a matter of right and wrong. It involves a question of personal liberty, and not even the great respect which, as a court, we may have for the dignity of the executive office, nor the personal regard which we may possess, and which is shared in by no one more than myself,

should in any way deter us from a calm and dispassionate consideration of the legal question raised by the record. If the respondent has been deprived of any right, it is the duty of the court to restore it. The means by which he has suffered the deprivation are immaterial. He is entitled to the protection of the law. The very essence of civil liberty consists in the right of every individual to claim the protection of the law. 1 Cranch, 163. Even in Great Britain the king himself is sued in respectful form of a petition, and he never fails to comply with the judgment of his court. "For every right," says Blackstone, "when withheld, must have a remedy, and every injury has its proper redress." It is idle to talk of "executive prerogatives" in this country. The word "prerogative" never had any place in our law. In this country no man is beneath the protection of the law, and no man above its restraints. The government of the United States, as has been termed, is "a government of law, not of men." Marbury v. Madison, 1 Cranch, 163. While, as Blackstone has it, the king himself could not be held to have been wrong, yet his agents and ministers were held to account to the subject or citizen for any violation of right. The supreme court of the United States, in the case of Marbury v. Madison, supra, disposes of the question in this way: After stating that the constitution imposes on the president certain duties, in the exercise of which he must use his judgment and discretion in such a manner that he is not subjected to the control of the court,—as, for instance, in the making of treaties, etc.,—and for the reason that these subjects are political, committed by the constitution to the sound judgment and discretion, not of the court, but of the president, the court proceeds: "But when the legislature proceeds to impose on that officer [a cabinet officer, acting under authority of the president] other duties, when he is directed peremptorily to perform

certain acts,—when the rights of individuals are dependent upon the performance of these acts,—he is so far the officer of the law, is amenable to the law for his conduct, and can not, at his discretion, sport away the rights of others." In view, however, of the great doctrine of Magna Charta, that no man is to be deprived of his life, liberty, or property, except by the judgment of his peers or the law of the land, and in view of the fact that this great doctrine of civil liberty has been, in some form, incorporated, not only in the constitution of the United States, but in the organic law of every state and territory of this nation, it is a matter of interest to inquire into the legislation which it is supposed has thus revolutionized our entire system. I say "revolutionized," for it must not be overlooked that the power we are now considering bears no semblance to the ordinary power of removal. Very many officers are removable at the pleasure of the appointing power. In such cases the officer takes the office with the knowledge of this fact, and can not complain. In such case it can not be complained that he has suffered any abridgment of his rights or his term. His very appointment creates a tenure subject to the pleasure of the appointing power. He has no vested right in any particular term. He may be removed at any time without notice and without cause. This is the legal tenure of his office, and, whether he serves a year or ten years, he has served the pleasure of the appointing power, and has thus been accorded all the rights and emoluments to which his appointment entitled him. Not so, however, in the case under consideration. The sheriff is not appointed by the governor, but elected by the people for a fixed term of two years. He is entitled, not as a matter of pleasure or favor, but as a constitutional right, to serve the two years, unless he should be guilty of some of the causes which, by law, warrant his removal. In this case the governor, under his offi-

cial seal, has declared that the accused has been guilty of such offense, and the accused, over his corporeal oath, has declared he has not been guilty; and the proposition contended for by the defendant in error is that this charge and denial do not constitute an issue; that the governor's recital is conclusive, and can not be inquired into. It is not pretended that the action of the governor was based on either his personal or official knowledge of the facts of the alleged offense. As a matter of law, we know, therefore, that the governor must have predicated his action on information received from other sources. What sources? The order of removal discloses nothing. Were charges filed? Were they supported by competent proof, or by any proof? These are matters the accused officer was not allowed to inquire into, as he had no notice of the action, and they are questions over which it is alleged the courts have no jurisdiction. Suppose, as a matter of fact, there was no evidence of delinquency. Suppose, as a matter of fact, the sheriff's sworn statement is true, and that he has been guilty of no wrong. Was his removal legal? The contention is that, as the governor has so declared in his order of removal, it follows as a conclusion of law that the cause existed, and that the power of removal was properly exercised. This is reasoning in a circle, and brings us back to the original proposition, that this contention makes the sheriff's office depend solely, not upon the default of the sheriff, but upon the pleasure of the governor; for if the recital of the governor, made without notice to the accused, that the latter has been guilty of the statutory offense, imports absolute verity, so that it is not a subject of review in any court, then it matters not, as a legal proposition, whether the governor had or had not any evidence upon which to predicate his action; and it follows, therefore, that the sheriff holds his office subject to the will of the governor. It is no answer to

say that it is not to be presumed that the governor will abuse this arbitrary power, unless it is agreed that the power exists. I know of no reason why the legislature could not confer this power on the governor, nor am I aware of any organic reason why the legislature could not empower the governor to appoint sheriffs in the first instance, and take away from the people the right to elect them. It is not what the legislature might do, but what it has done, that we are now discussing. Has, therefore, the legislature provided a system of laws whereby the people, in the first instance, are authorized to elect sheriffs, subject to the right of the governor to remove them at pleasure, and appoint their successors?

This brings us to the legislation on the subject. Section 27 of the act approved February 12, 1891, or so much thereof as relates to the present inquiry, is as follows: "Any tax collector who shall fail to pay over all school money collected by him within thirty days after the tenth day of each month in which the same is collected shall be summarily removed by the governor from the office of collector." Then follows the provision which punishes him with disqualification for holding office thereafter. This act was amended by the Act of 1893, page 1. But, before proceeding to discuss the amendatory statute, let us pause long enough to determine the nature and extent of the power and the authority conferred on the governor by the statute just mentioned. It will not be contended that this statute conferred the authority to remove, except in case of the delinquency described. The existence of the fact of delinquency was a necessary condition of the exercise of the governor's power. If the sheriff was not in fact delinquent, then the attempted removal was a usurpation of power, and the action of the governor was absolutely void. As a proposition of law, this will not be denied; and yet the assumption that the

action of the governor is conclusive is in fact and in effect a denial of this proposition, inasmuch as it holds that the governor's recital is conclusive,—that is to say, that the order of removal is just as effective in the absence as in the presence of the causes assigned. It follows, therefore, as a conclusion from which there is no escape, that the governor is clothed with the absolute power of removal independent of the existence of the alleged cause, or else that the cause of removal may be in some form inquired into. So much, therefore of this statute as makes the existence of a delinquency a necessary condition of the governor's action is mere surplusage, except as an admonition to the governor that he ought not to exercise this arbitrary power as a mere whim. In my opinion the whole construction of this statute may be embodied in a single proposition. It is this: Not a single instance can be found in any common law jurisdiction in which an officer has been removed, and punished by disfranchisement, for an alleged criminal act, without notice and without hearing. Such an arbitrary power belongs to the middle ages, and the semibarbaric administration of the civil law. It could not exist under the benign influences of the common law, that "hears before it condemns, and tries before it executes." It is said, however, that the statute under which this proceeding was had does not provide for any notice to the accused officer. No such requirement was necessary. It authorized the removal, not on the accusation, but on the existence of the fact, and I assert, as a proposition of law so firmly imbedded in the common law as to be beyond the control of the legislature, that, when punishment is made to follow the ascertainment of a given fact, notice to the accused is absolutely essential to the ascertainment of such fact; and I do not hesitate to aver that an act of the legislature that should undertake in terms to punish an officer by removal from

office, and disqualification forever thereafter to hold office, without giving the accused notice,—without a right to be heard,—would be held, in any common law court, an absolute nullity, being in contravention of the principle already announced, that no man shall be deprived of his life, liberty, or property without due process of law. That this provision of the constitution is not "locally inapplicable" to this territory is, I believe, admitted; that the right to exercise the duties and enjoy the emoluments of the office of sheriff is liberty, if not property, is not denied; and that his removal therefrom, without notice, under charge of delinquency,—such removal bringing upon him the attaint of disqualification for holding office,—was not due process of law, is a proposition that ought not to require argument or authority for its support. I shall not undertake to define the meaning of the synonymous terms "due process of law" and "law of the land." Volumes have been written without improving on Mr. Webster's definition, that "by 'due process of law,' or 'law of the land,' is meant a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial." Dartmouth College v. Woodward, 4 Wheat. 518; Murray v. Hoboken, 18 How. 276; Clark v. Mitchell, 64 Mo. 578. It is law in its regular course of administration. 2 Kent. 13. "It is a conduct of proceeding according to prescribed forms and solemnities." Bertholf v. O'Reilly, 74 N. J. 519. "It means being brought to answer according to the old law," says Lord Coke. 2 Inst. 50. "It does not necessarily imply a trial by jury, but it must be according to some settled rule of proceeding." Walker v. Sauvinet, 92 U. S. 90. "It may be summary, as in the matter of distress for rents, or in the enforcement of excise or revenue laws." Weimer v. Bunbury, 30 Mich. 210; Springer v. U. S., 102 U. S. 586. But I shall not undertake to trace this interesting inquiry,

tempting as the task may be, through the hundreds of well considered cases involving the application of this great underlying principle of constitutional liberty. It is the child of the common law, and is too firmly rooted in the principles of common law liberty to be displaced by any arbitrary power emanating from the rules, practices, customs, or legislation derived from the Latin jurisprudence, or embodied in the civil law. While it is not easy to lay down any rule applicable to all cases that may arise, yet there is one proposition that is settled now, and is no longer the subject of dispute or of inquiry. It is this: There can be no due process of law without notice and a hearing, or an opportunity to be heard. In judicial proceedings, "due process of law requires notice, hearing, and judgment." 6 Am. and Eng. Encyclopedia Law, p. 43, note. "A hearing, or an opportunity to be heard, is absolutely essential. We can not conceive of due process of law without this." Mr. Justice MILLER in Davidson v. Board of Administration of New Orleans, 17 Abb. Law J. 223, cited in 6 Am. and Eng. Encyclopedia Law, page 44, note. "Due process of law" means to give the party affected an opportunity to be heard respecting the justice of the judgment sought. Notice is absolutely essential to the validity of the proceeding in any case. It may be given by personal citation, and in some cases it may be given by statutes; but given it must be, in some form. County of San Mateo v. Southern Pac. R. Co., 8 Am. and Eng. R. R. Cases, 27. There can be no due process of law in the absence of notice, and to say that a citizen may be deprived of the office to which he has been elected, and forever thereafter be disqualified to hold office, without notice to him, is to assert a proposition so revolting to our sense of justice that it seems a work of supererogation to cite authorities in opposition to it. In the case of Kennard v. Louisiana ex rel. Morgan, 92 U. S. 480,

the supreme court of the United States considered the question under a statute of Louisiana providing for the removal of officers whose term had expired, and who refused to vacate, and the Louisiana statute was upheld alone upon the ground that it gave the party proceeded against notice.    It was held that this was due process of law.

But it is insisted that the matter under consideration involves an executive, and not a judicial, action, and that therefore, the doctrine of due process of law has no application, and that an effort to inquire into the action of the governor is a usurpation of authority. I have already conceded that, in most of its affairs, the executive as well as the legislative branch of the government is independent of the judicial; but wherever any action is taken, whether by an executive or legislative officer, that affects the life, the liberty, or the property of the citizen, such citizen has the right to appeal to the courts of the country for protection against the abuse of such authority. It is admitted, of course, that the courts are clothed with the power and duty of inquiring into the constitutionality of an act of the legislature, and that by proper process they may regulate the conduct of administrative and executive officers.  The proposition that the executive is a coordinate branch of the government, and that, in the exercise of the discretion imposed upon him by law, he is not subject to the control of the courts, is not only admitted, but earnestly insisted upon, by me.   What I challenge is the propriety of the application of that doctrine to the facts of this case.    I deny that the governor is authorized to remove the sheriff of a county without notice or hearing, and therefore without cause, for the power to remove without notice, as already seen, is ex vi termini, the power to remove without cause.

But it is said that the record in the case discloses the fact that the governor acted on evidence before

him.   The executive recites, "And whereas it has been shown by satisfactory proofs," etc.   I deny that there was, or could have been, any such proofs.   I affirm the proposition that in no country on earth, governed by the principles of the common law, is it possible to submit satisfactory proofs, sufficient to convict a man, in his absence, and without notice to him.   The whole proposition that the governor may proceed in the absence of a sheriff, and without notice to him, to hear proofs and pass judgment upon him, depriving him of his office and disfranchising him for life, is a judicial solecism that ought not to find recognition in any court of justice.   It may be that the sheriff was guilty of all the offenses alleged against him, but he was entitled at least to the privilege accorded to the worst criminal in the land.   If the governor had had personal knowledge of the truth of the charges alleged against the sheriff, he was not authorized to act upon such knowledge, for it was Erskine who said, in the presence of the judges of the king's bench, "if a man were to commit a capital offense in the face of all the judges of England, their united authority could not put him on trial." There are many processes that are necessarily summary—notably, those resorted to for the collection of taxes, etc.—but in all such cases it is universally held that notice must be given before distraint.   It is sometimes difficult to draw the line which separates judicial from executive functions.   It is always safe however, to say that no action, whether executive or judicial, can be taken to deprive one of his life, liberty or property, without first giving him notice.   There is absolutely no exception to this rule to be found anywhere, and it does not cure the matter to call it an "executive action," and it does not detract from its despotic character to say that its healthful exercise requires haste and secrecy.   There are a great many acts, as already indicated, which are of a semijudicial character, which

nevertheless, in their execution, require notice. This doctrine was applied by the supreme court of the United States in the case of the Chicago R. R. Co. v. Minnesota, 134 U. S. 418. That involved an act of the legis-. lature of Minnesota which undertook to confer on the railroad commission the right to fix rates of railroads without providing for notice. The court said: "No hearing is provided for—no summons or notice to the company—before the commission has found what it is to find; * * * no opportunity provided for the company to introduce witnesses before the commission, nor, in fact, anything which has the semblance of due process of law." Or, to use the language of Mr. Justice FIELD, of the supreme court of the United States: "Whatever the character of the proceeding—whether judicial or administrative, summary or protracted, and whether it takes property directly, or creates a charge or liability which may be the basis of taking it—the law directing the proceeding must provide for some kind of notice. Nothing is more clearly established by a weight of authority absolutely overwhelming than that notice, and an opportunity to be heard, are indispensable to the validity of these proceedings."

Are we to be told that an exclusive act which is without authority of law can not be inquired into? Let us see. Up to a recent period the law authorized the governor to issue death warrants upon the ascertainment of the fact that a citizen had been guilty of murder in the first degree. To be sure, the law required that the fact of the crime be ascertained upon proper proceedings instituted for that purpose. But suppose the governor, under the then existing state of the law, had issued a death warrant to be executed upon a party who had in fact never been convicted. Will it be said that, because his warrant recited the fact that the conviction had been properly had, therefore no court could have inquired into it?

But it 'is said that if the relator, in this case, has a remedy, it is by quo warranto, and not by mandamus. And it is further said that there is now pending a proceeding by quo warranto to test the title of the relator and the respondent to the office of the sheriff. I very freely concede the general proposition that quo warranto, and not mandamus, is the proper proceeding by which to determine the abstract question of title to office, but I am at a loss to understand how this proposition aids the relator. He it is who is invoking the aid of the courts. He presents an order of the governor, which purports to be an executive order, removing his predecessor, and appointing him. He comes into court with a petition which recites that the respondent was duly elected and qualified as sheriff, and that since that time the respondent has been duly removed, and that he (the relator) has been duly appointed; that the respondent refuses to deliver up the books, property, and paraphernalia of the office; and he therefore invokes the summary and extraordinary power of the court to compel the respondent to turn over the property—that is to say, to turn over the office—to him. Very true, the respondent is allowed to state, in reply to the alternative writ, his reason for not having, in the first instance, surrendered up the office to the relator. This he does by coming into court, by exhibiting his credentials, and by solemnly stating under oath that he has never been removed, and that he is still sheriff, de jure and de facto. Now, I say the very first question presented to the court for its determination was, "Who is, in fact and in law, the sheriff?" The relator presents a commission signed by the governor. The respondent presents a commission signed by the people who elected him. That the very question presented here, and decided by the court below, was the title to the office itself, is shown by the final decree which was entered in the case, which recites,

inter alia: "The said William P. Cunningham then and
there became, and was and now is, the sheriff of said
county of Santa Fe, and entitled to discharge the duties
thereof, and is entitled to the possession of said office,
and of said books, and the property of every kind per-
taining to said office," etc.   Here is a solemn adjudi-
cation that the relator had shown himself entitled to
be sheriff, and that he was the sheriff, and this decree
will be pleaded in the court below whenever the action
by quo warranto is brought to a hearing, as a final ad-
judication by the highest court of the territory in favor
of the relator's title to the office; and in passing this
decree this court is passing just as effectually upon the
quo warranto proceedings as if they were before us in
form.   I am not criticising the form of the decree in
the court below.   I am simply combating the doctrine
advanced by the majority here, that the title of these
two contesting parties is in no way involved.   I deny,
however, as a general proposition, that mandamus does
not involve the question of title to office.   Wherever it
is brought to compel the restoration of an ousted
officer, or, as in this case, to compel the delivery of the
insignia or paraphernalia of office, it necessarily in-
volves—incidentally, at least—the title to the office. It
has been constantly held that mandamus will lie to
restore to office a party illegally ousted.   3 Bl.; Dew v.
Judges, 3 Hen. & M. (Va.) 23.   In the case of Metsker,
Mayor, etc., v. Neally, City Engineer, 21 Pac. Rep. 206,
it was held that an officer of a city government, im-
properly removed by the mayor, could be restored by
mandamus.   In this case the relator had been turned
out of his office, and his successor put into possession.
He was restored, however; the courts holding that he
had been illegally ousted; it being held: "If the sus-
pension of the plaintiff was unauthorized, there could
have been no vacancy to fill, and the appointment of
Tweedale was without authority of law; and the plain-

tiff's office room, books, records, instruments, insignia, etc., having been taken from him by reason of such illegal suspension, it follows that a restoration to office should be accompanied by restoration of all things pertaining to the office, of which he has been deprived. For this relief, mandamus is the proper remedy." State v. Sherwood, 15 Minn. 221; 15 Ill. 492; 25 Ill. 325; 78 Ind. 269; 55 Tex. 389; High, Extr. Leg. Rem., sec. 73, et seq.; 1 Dill. Mun. Corp., sec. 302.

Applying the doctrine of these cases to the case at bar, I submit that it does not lie in the mouth of the defendant in error to say that the court had no jurisdiction to restore the plaintiff in error to office, or that the title to the office was not involved. The two men stood before the court, the one commissioned by the people, the other by the governor; the former alleging that he had been duly elected and qualified, and had done nothing to forfeit his office. The latter, admitting this to be true (for denying him the right to make this proof was an admission of the fact), nevertheless sought the active aid of the court, by its mandamus, to compel the duly elected sheriff to turn over the papers and business of the office. I think it was clearly the duty of the court to say to the relator, in effect, that, before affording him the extraordinary relief of mandamus, it would satisfy itself of his right to exercise the functions of the office. It did not lie with the relator to decline such an investigation. He was seeking the active aid of the court. He had called upon the respondent to show cause why he refused to surrender up the property of the office, and the response was that it was because the relator was not entitled to demand it, by reason of the fact that he had been appointed without authority of law. A mere suggestion to the court that the party seeking its aid was an interloper or usurper was sufficient, in my opinion, to arrest the attention of the court and to put on foot an inquiry as

to the truth of the charge.   The form to be taken by
this inquiry is a matter of secondary importance.   I do
not care whether it is called "mandamus" or "quo
warranto."   The substance ought not to be sacrificed
to a mere shadow.   The fact was that the regularly
elected sheriff had been removed without authority of
law, and this fact was made to appear to the court
whose duty it was, on ascertaining this fact, to restore
him.   In the case of Dew v. Judges, supra, it was said:
"It has been objected, however, that mandamus will
not lie where the party has another legal and specific
remedy; but we are told otherwise by Judge BLACK-
STONE, who calls it a high prerogative writ of a most
extensive remedial nature, and that it may issue in some
cases where the injured party hath also another, more
tedious, method of redress, as in the case of admission
or restoration to an office."   As the case from which
this quotation is taken is a leading one, it will shed
light on this controversy to state briefly the facts out
of which the controversy arose.   Dew, the appellant,
had produced in court a commission signed by a ma-
jority of the judges, appointing him clerk of the district
court; also, a certificate showing that he had taken the
oath of office, but not offering a sufficient security for
the faithful performance of the duties of the office.   The
court proceeded to appoint one Erastus Stubling, who
took the oath, and entered upon the discharge of the
duties of the office.   This took place on the eighteenth
day of May, 1805.   On a subsequent day of said term,
to wit, on the twenty-seventh of May, Dew appeared
in court with a sufficient bond, and was refused to be
admitted because he had not qualified on the first day
of the term. He thereupon sued out the writ of manda-
mus.   It will thus appear that in the Virginia case,
as in this, the contention arose out of competing
claims to the office.   In that case the clerkship, and in
this case the sheriffalty, was the subject of the conten-

tion. In that case it was between the party who had been
regularly appointed by the regular appointing power,
on the one side, and, on the other, a party who had
been appointed to fill a supposed vacancy; and in this
a contest between the officer actually elected and qual-
ified, on the one side, and, on the other, a party who
claims to have been appointed to fill the vacancy. In
view, therefore, of the great similarity of the two cases,
it is interesting to note the action of the supreme court
of Virginia. Randolph and Wirt appeared in the case,
and St. George TUCKER, delivering the opinion of the
court, says: "Mandamus lies to compel admission or
restoration of the party applying for any office or fran-
chise of a public nature, whether spiritual or temporal;
*   *   *   it has, therefore, every character that may be
thought necessary to entitle the person holding such
commission, and who hath been either refused admit-
tance into his office, or improperly turned out of it, to
the benefit of a writ of mandamus. It has been ob-
jected, however, that mandamus will not lie where the
party has another legal, specific remedy, but we are
told otherwise by Judge BLACKSTONE," etc. This case,
and the cases of State v. Common Council of Water-
town, 9 Wis. 254; Lindsey v. Luckett, 20 Tex. 516;
Geter v. Commissioners, 1 Bay, 354; Singleton v. Same,
2 Bay, 105; Ex parte Diggs, 56 Ala. 381; Ex parte
Wiley, 54 Ala. 226; and Millikenn v. City Council, 54
Tex. 388,—are cited in support of the proposition that
mandamus is the proper remedy for the restoration of
one who has been improperly removed from office.
High, Extr. Leg. Rem. 67.

Having endeavored to demonstrate that the title of
these two contestants for the office of sheriff was nec-
essarily involved in the controversy, it is my purpose
now to demonstrate that the relator, Cunningham, did
not present in his application, in view of the pleading,
even a prima facie title to the office. I propose to show,

in addition to what has already been said, that an admission on his part that his predecessor had been removed, and that he had been appointed without notice, and therefore without proper inquiry, was an admission that his pretended title was an absolute nullity.

Before proceeding, however, to discuss other authorities to which I shall refer, I desire to refer briefly to one incident connected with the Virginia case already referred to. So deeply were our fathers impressed with the justice and necessity of notice to the officer to be removed, that it was seriously insisted that the respondent in that case had not been served with due notice, although he was the acting clerk, and had official notice of the filing of every paper in the cause. Accustomed as we are to the modern practice that provides a court wherever a judge may be found, and that authorizes the issuance of extraordinary process of prohibition, etc., from the judge's private chambers, and that, too, on the ex parte statement of the relator, without notice to the party to be affected, it is interesting to recur occasionally to the landmarks of the ancient common law, and to tread again the dusty aisles of her temple of justice, that we may imbibe anew the spirit of freedom that required a notice before hearing, and a hearing before judgment. And I must confess that it is not a pleasant reflection to ascertain that, the higher we trace this doctrine, the more vigorously it was maintained. Every lawyer is familiar with the Baggs Case, 11 Rep. 99. This was in 13 Jac. 1. Baggs was removed from office for inviting the mayor to salute an indescribable portion of his person; but the king's bench restored him, because he had been removed without notice, holding that such action was void. The author of the Institutes quotes the words of the Evangelist to this effect: "Doth our Lord judge any man before He hear him, and know

what he doeth?" And again: "It is not the manner of the Romans to deliver any man to die before that he which is accused have the accuser face to face, and have license to answer for himself concerning the crime laid against him." It was Fortescue who said: "The objection for want of notice can never be got over. The laws of God and man both give the party an opportunity to make his defense, if he has any. I remember to have heard it observed by a very learned man, upon such an occasion, that even God himself did not pass sentence upon Adam, nor remove him from the garden, before he was called upon to make his defense. 'Adam,' says God, 'where art thou? Hast thou eaten of the tree whereof I commanded thee thou shouldst not eat?' And the same question was put to Eve." Rex v. Chancellor of Cambridge, 1 Strange, 567. This trial of Adam and Eve, referred to by the English court in the case just cited, is the first reported action of ejectment or removal of which we have any knowledge; and yet the defendants were given notice, and allowed to make their defense. The author of the Institutes gives us a liberal translation of Virgil's lines: "First, he punisheth, and then he heareth." And in Baggs' case, already referred to, which was an action by mandamus to compel the mayor, etc., of Plymouth to restore the relator to his office, as one of the twelve burgesses of the borough, the court of king's bench said: "And although they have the lawful authority, either by charter or by prescription, to remove any one from the freedom, and that they had just cause to remove him, yet it appears by the return that they have proceeded against him without hearing him answer to what was objected, or that he was not reasonably warned. Such removal is void." 6 Coke Rep. 184. The removal of the sheriff by the governor in this case, whatever else may be said of it, can certainly have no greater weight, and imports no

higher verity, than the judgment of a court of compe-. tent jurisdiction, and yet it has been constantly held that a judgment rendered without notice is void (Dennison v. Hyde, 6 Conn. 516), and that the taking of the property of one man, and giving it to another, even where such taking is authorized by positive statute, is confiscation (41 Mo. 415), and that in courts of general jurisdiction, where the existence of certain facts is jurisdictional, the recital of the existence of such facts is not conclusive (7 Rob. Pr. 76, and note; Hodson v. Walker, L. R. 7 Exch. 60); and, where presumption is relied on to support jurisdiction, such presumption is entitled to but little, if any, weight (Bloom v. Burdick, 1 Hill, 136). And in Williamson v. Berry, 8 How. 540, the doctrine is broadly announced that, when the proceedings of one tribunal are offered as a support for other proceedings, the validity of the offered proceedings may be inquired into. There is a constitutional provision that entitles the judgments and decrees of one jurisdiction to full force and credit in another. And yet it is well settled that, on a suit brought in one state on a judgment rendered in another, the defendant may show that he was not served with notice. 7 Rob. Pr. 111, and cases cited. It was held in Newcomb v. Dewey, 27 Iowa, 387, that the recital in the judgment itself that the party had notice, may be contradicted. No statute can authorize the deprivation of any man of his property or rights without notice to him. It can not be done by consent, even, for the party to be affected must have notice in order that he may consent. Any other rule is confiscation. Rex v. Cleg, 1 Strange, 475; The Mary, 9 Cranch, 144; 4 Dana, 435; 9 How. 350; 11 Ark. 6 Eng. 558; 4 Comstock, 518.

The discussion, up to this point, has proceeded alone as to the power conferred upon the governor by the twenty-seventh section of the act approved Feb-

ruary 12, 1891, which, as already seen, authorizes the governor to remove summarily any delinquent sheriff who shall for thirty days fail to pay over school money collected by him. I have endeavored to show that, assuming this to be the law of the case, the accused officer was entitled to notice. I now propose to show that this legislation has been so far amended as to make the validity of the removal to depend as much upon the notice as upon the existence of the fact upon which the removal is predicated. It must have been apparent, even to the unprofessional reader, that the act of 1891 bore on its face a harsh expression. There is something so extremely revolting to the American sense of justice in the idea of trial and punishment without notice that the legislature of 1893 determined to so amend the former act as to leave no misunderstanding as to the duty of the governor in the premises. Accordingly the following act was passed: "Section 1. That hereafter no person who is a holder or receiver of any public moneys of this territory or any county thereof shall be eligible to any public office in this territory or any county thereof until the same is accounted for and paid into the treasury, and each public officer in addition to the oath of office already prescribed shall take an oath that he is not the holder of any public moneys due the territory or any county thereof which is unaccounted for, and all holders, collectors, or receivers of any public money of the territory or any county thereof who have refused when called upon or failed after reasonable opportunity to account for and pay over such public moneys to the proper officer, shall be held and deemed ineligible to hold any civil office in this territory or any county thereof, and it shall be the duty of the governor to forthwith vacate the commissions of all defaulting tax collectors or of tax collectors or receivers or of any other person in whose hands public moneys shall come,

who shall fail to do their duty in any respect as prescribed by law. The vacation of such commissions to be done in a summary manner, after notice to the defaulting officer sufficient to give him an opportunity to be heard in his defense," etc. Act approved January 4, 1893. The emphasis given to a portion of the foregoing statute, is, of course, my own; but it is entitled to all the emphasis that may be given to it, for in the emphatic words are embodied the very soul and body of due process of law—notice and a right to be heard. This statute was in force when the governor undertook to remove the plaintiff in error. It is admitted by the pleadings and the judgment that its requirements were not observed. I am clearly of the opinion, therefore, that the position of the defendant in error before the court below was an admission that the action of the governor was void and that, therefore, the paper presented by him, purporting to be an appointment to the the office, did not, in the face of this admission, constitute even a prima facie title to the office, and that, therefore, in view of the fact that he declined to submit the matter to the consideration of a jury,—thus admitting that the action of the governor was taken witnout notice, and was therefore void,—it was the duty of the court below to dismiss his petition.

In concluding my observations, I desire, if I have not already done so, to emphasize the fact that I have discussed the questions raised by this record from a purely impersonal standpoint. No man has greater respect than I for the high office of governor of this territory; and, added to that, I suppose it is not improper for me to say that I entertain the very highest regard for the great personal worth and integrity of the gentleman who fills that exalted office. The argument of Justice FALL, that the relator had been recognized and qualified by a former judge, and that, therefore, he was entitled, prima facie, to the paraphernalia

of the office, is a very able one, but, in my opinion, does not meet the fatal defect shown in the relator's title by his admission that the proceeding was without notice.