(No. 2832. April 27, 1923.)

LOVE v. DUNAWAY et al.

(STATE TAX COMMISSION, Intervener).

(1)   The State Tax Commission is without power or authority, under the statutes of 1921, to classify the several counties of the state for the purpose of fixing the salaries of county officers.                              P. 562

(2)   Article 8, § 1, of the Constitution, does not require uniformity throughout the state as to taxes levied and assessed for purely county purposes; the requirement of uniformity being met in such case if the operation of the tax be equal and uniform throughout the county.    P. 563

Appeal from District Court, Lea County; Hatch, Judge.

Action by R. F. Love against J. E. Dunnaway and others, County Commissioners of Lea County, in which the State Tax Commission intervened. From à judgment for plaintiff, intervener appeals. Affirmed.

J. M. Hervey, of Roswell, for appellant.

S. D. Stennis, Jr., of Carlsbad, for appellee.

OPINION OF THE COURT.

BOTTS, J.   Chapter 12 of the Session Laws of 1915 is "An act relating to county officers," and is commonly referred to as the "County Salary Law." Section 1 of that act, for the purpose of fixing salaries of county officers of the several counties in the state, divided the counties into five classes, numbered from 1 to 5, inclusive, based upon the full assessed valuation of the counties for the year 1914; first-class counties being those having the highest prescribed valuation, and fifth-class counties being those having the lowest prescribed valuation. Section 2 of the act prescribes the salaries for the different county officers in counties of the several classes, the salaries diminishing as the classification of the counties is lowered. Under that scheme of classification, the officers of counties of the second class receive a higher salary than those

in counties of the fourth class.  Section 19 of the act is as follows:

"From and after the first day of January, 1917, the classification of counties shall be fixed and governed by the assessed valuation as finally fixed for the preceding calendar year.  Provided:  Within thirty days after said first day of January, 1917, and within thirty days from the first day of January of each fourth year thereafter, such classification shall be determined by the state auditor from the assessed valuation of each county as finally fixed for the preceding year, and the state auditor upon making such determination shall notify the board of county commissioners of each county of the class within which each of the counties of this state falls according to such classification and the classification as so fixed and determined by the state auditor shall govern the salaries of county officers for four years thereafter."

This act, in respect to the specified provisions, has not been repealed or amended unless, as contended by the appellant here, by the provisions of chapter 188 of the Laws of 1921, commonly known as the "Budget Law," and chapter 133 of the Session Laws of that year, commonly known as the "General Tax Code."

The 1921 Budget Law provides that the State Tax Commission shall require from the boards of county commissioners of the various counties of the state each year estimates of revenue required to meet the ordinary financial needs of such county during the ensuing year, and transmit same to the State Tax Commission, upon which body authority is conferred to deal with said estimates as set forth in section 3, as follows:

"The State Tax Commission shall, upon receipt of such budget estimates, and the statements by the traveling auditor, consider such estimates and may hold public hearings thereon, at which hearings they may require the attendance of any official or employee of such county, or of any state official or employee.  The State Tax Commission shall have the power to make such further investigations as it may deem advisable or proper for the purpose of obtaining the information and data necessary to its action on such budget estimates.  The State Tax Commission shall have the power to approve or disapprove in whole or in part, or change such budget estimates as so submitted to it, and all approvals or disapprovals, or amendments or changes shall be made a matter of record by said Tax Commission."

Section 4 of the Budget Law, after providing for certifying the results of the action of the State Tax Commission upon such estimates, contains the following language:

"Said approved and certified budget shall be binding upon all county officials, and the several boards of county commissioners, and all other officials having the right to allow and pay claims from the revenues to be so provided shall not allow nor approve claims in excess thereof, nor shall the county treasurers pay any county or other warrants in excess thereof, and such allowances or claims or warrants so allowed or paid shall be a liability against the officials so allowing or paying such claims or warrants."

Section 507 of chapter 133, Laws of 1921, sets forth the State Tax Commission's general powers and duties, and subsection 8 thereof provides that—

The Commission shall "have power and be charged with the duty of requiring the officers or governing body of all counties, municipalities, school districts or any other district having the power of taxation or authority to expend public moneys, to furnish and file with the Commission, on or before the first Monday of August of each year, a budget showing in detail the financial condition of such district, and containing an estimate in detail of the financial needs of such districts for which taxes must be levied by or through the boards of county commissioners at their meeting on the first Monday in October or otherwise as required by law. Such budget shall be in such form and contain such information as may be prescribed by the Commission. Such budget shall be examined by the Commission, who shall have power and are charged with the duty to amend, revise, correct and approve the same as amended, revised or corrected, and certify the same to the board of county commissioners of each county, on or before the first Monday in October of each year. Such budgets when approved by the Commission shall be binding on all tax officials of the state."

Section 305 of said chapter 133 makes it the duty of the boards of county commissioners to make levies in their various counties each year, and to certify the same to the county assessor, and concludes as follows:

"Such levies shall conform to and be within the budgets or estimates for such year, as approved by the State Tax Commission, and shall be within the limitations as to purpose and maximum rate of levy as provided by law."

In accordance with the provisions of section 19 of the county salary law above quoted, Lea county was classified by the state auditor in January, 1921, as a county of the second class, and the salaries of the officers of that county thereby became automatically fixed in accordance with such classification.

In pursuance of the provisions of the Budget Law, the county commissioners of Lea county prepared and submitted to the State Tax Commission their budget for the year 1923, estimating salaries of county officers upon the basis of Lea county being a second-class county as therefore classified. As a matter of fact, the total assessed valuation of all the property in Lea county for the year 1922, being the year next preceding that for which the budget was submitted, was so greatly reduced by prevailing economic conditions as to bring the county down from second to fourth class, if a reclassification could then have been made. It seems that the total assessed valuation of property in some of the other counties of the state had likewise been reduced, and upon consideration of the budget estimates of such counties, the State Tax Commission adopted the following resolution:

"Whereas it appears from the certificates showing taxable valuations of the various counties furnished this Commission by the county officials of this state, for the year 1922, that in certain counties various conditions have combined to reduce said taxable values from the said values in said counties for the year 1921 and previous years.

"And whereas it further appears that by reason of such reduction in taxable value the funds to be raised by the levy of the maximum legal rate of five mills upon such 1922 valuations will not be sufficient to pay the salaries of county officials based upon the present classification in the said counties,

"And whereas the county budget law passed by the 1921 session of the Legislature (chapter 188, Laws of 1921) requiries that this commission revise, alter, and amend county budgets so as to produce sufficient funds to meet necessary requirements,

"And whereas in the construction of the said act this Commission takes the view that the said prescribed revision, alteration and amendment should contemplate such changes, among others, as may be necessary to produce funds sufficient to pay the salaries that can be raised by taxation upon

existing valuations as they appear from the 1922 tax rolls,

"And whereas this Commission is satisfied that upon the valuations of the said counties as they now exist the budget estimated for salaries for county officials cannot be paid ȝut of the funds to be raised in accordance with the present valuations of the said counties:

"Now therefore be it resolved, in view of the aforesaid enumerated conditions, that the estimates for salaries for county officials in the counties hereinafter named be and they are hereby reduced to the following sums:" (Here follow a specification of the salaries to be allowed the officers of the various counties, those of Lea county being the salaries provided for counties of the fourth class.)

A copy of this resolution was furnished the county commissioners of Lea county, and said commissioners were about to make their tax levies in accordance with the budget as reduced by the State Tax Commission; the proposed levy for salaries being sufficient to provide funds for the payment of salaries of officers in a fourth-class county, but insufficient to pay salaries of the officers in a second-class county. Thereupon the appellee, who is the duly elected and qualified sheriff of Lea county, applied for and obtained an alternative writ of mandamus against the county commissioners commanding them to make a levy on all property subject to taxation in that county sufficient to pay the salaries and expenses of the county officers for the year 1923 on the basis of salaries and expenses to be allowed to officers of counties of the second class, or, in the alternative, to show cause why they had not or could not do so. Before the return day of the alternative writ, the State Tax Commission petitioned for leave to intervene, which petition was granted, and the Commission thereafter became and was treated as the principal respondent. The facts were stipulated, and thereupon the court below directed the issue of a peremptory writ, and the matter is brought before us on appeal of the State Tax Commission.

It is the contention of appellant that the General Tax Code and the Budget Law, passed subsequent to the passage of the County Salary Law, worked such a radical change in the manner of assessing and collecting taxes and in the manner of the supervision

thereof, and conferred such additional authority upon the State Tax Commission as, notwithstanding the provisions of section 19 of the County Salary Law above quoted, gave the Commission the power to classify counties from year to year, or, at any rate, to change the classification when a radical change had been worked in economic conditions in the county as existed in Lea county in this instance. The portions of the Budget Law and the Tax Code herein quoted are the only provisions of those statutes to which the appellant directs our attention as supporting its contention.

[1] That the right to fix salaries of county officers is vested in the Legislature will not be disputed. Likewise, there is no question raised but that the Legislature, if it saw fit to do, could authorize the State Tax Commission to classify the different counties upon some uniform basis for the purpose of fixing such salaries, as the Legislature did authorize and direct the state auditor so to do by the law of 1915. The question here is whether or not the Legislature has given the Tax Commission that authority. It has been said by this court (Maxwell Land Grant Co. v. Jones, 28 N. M. 427, 213 Pac. 1034, that the State Tax Commission has only such power and authority as is granted to it by the Legislature, and we fail to find, in the 1921 statutes relied upon by appellant, any authority to fix the salaries of county officers by a reclassification of counties or otherwise. It is true, the Commission is given the power to supervise the budgets submitted by the several counties, and this power would undoubtedly authorize the Commission to reduce the budget estimate for county salaries where it is apparent that such estimate is more than sufficient to pay the salaries as fixed by law, but that is something very different from the fixing of the salaries themselves. So, in this instance, the salaries of the county officers of Lea county having been definitely fixed under the act of 1915, the State Tax Commission was without power to reduce the budget estimate for the payment of these salaries below the amount required to pay the salaries so fixed.

Appellant advances the proposition that the operative part of section 19 of the County Salary Law is contained in the first three lines thereof, providing that classification of counties shall be based on the valuations as fixed and determined for the preceding calendar year, and that the words following under the proviso simply provide a method and stated period whereby the state auditor shall fix generally the classification of the various counties in the state. Had this been the intention of the Legislature, there would have been no object in using the language of the last clause of said section whereby it is provided that—

"The classification as so fixed and determined by the state auditor shall govern the salaries of county officers for four years thereafter."

It may be that it would have been to the interest of the taxpayers for the Legislature to have provided for a reclassification with every change in economic conditions in the several counties, but this was purely a legislative question, with which we have nothing to do. Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654. The Legislature has decided that each classification, when made, should remain as fixed for a period of four years and has expressed that determination in plain language.

[2] Appellant finally contends that section 19 of the County Salary Law violates the provisions of section 1 of article 8 of the Constitution, which is as follows:

"Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class."

Counsel cites us no authority in support of this contention, and, for that matter, neither does counsel for appellee cite us any authority in opposition.

As we understand the argument of appellant, it is that this provision of the Constitution is violated for the reason that the taxpayers of Lea county, owing to

the great reduction in assessed valuation of that county since the previous classification, are compelled to pay a higher rate of taxation for county salaries than are the taxpayers of other counties in the state of the second class, wherein the total valuation has not been so reduced. In other words, the argument is that the rate of taxation for county salaries is higher in Lea county than in other counties of the state having the same total valuation in which there has been no reduction since classification. By way of illustrating his point, counsel says:

"Suppose an extreme case arising under conditions similar to this as follows: That Lea county, in 1920, was a county of the first class requiring between $20,000 and $25,-000 to be assessed for the salaries of county officers, and that there was such a radical shrinkage in values during the two or three years intervening between classification period that it would be reduced to a county of the fifth class requiring $6,000 or $8,000. That would mean that the taxpayers in Lea county would be assessed for $20,000 or $25,000 salaries, the same as taxpayers in Bernalillo, Colfax, Chaves and other large counties classed as first-class counties, with a valuation of one-fourth or one-fifth of the amount of said counties. This would be discrimination in taxation, and would not be uniform in compliance with the Constitution."

It will be noted, however, that the tax is equal and uniform throughout the county, which is all that is guaranteed by the provision of the Constitution relied upon, so long as the tax levied is for a county purpose, as in this instance. This provision does not require that the levy for payment of county salaries shall be the same in every county in the state, but only that it shall be equal and uniform throughout the county.

Several states have similar constitutional provisions, all having for their purpose uniformity and equality of taxation, and it has been held, without exception so far as we have been able to find, that the provision does not require that the rate of assessment shall be uniform and equal for all purposes throughout the state, but that the rate must be uniform and equal throughout the locality in which the tax is levied, and if the levy is for a state purpose, then the rate must be uniform

and equal in all parts of the state; if for a county purpose, the rate must be equal and uniform throughout the county in which the levy is made, and so in any other taxing district. Bright v. McCullough, 27 Ind. 223; Loftin v. Citizens' National Bank, 85 Ind. 341; Board, etc., v. State ex rel., 155 Ind. 604, 58 N. E. 1037; East Portland v. County of Multnomah, 6 Or. 63; Jones v. Memphis, 101 Tenn. 188, 47 S. W. 138; Norris v. City of Waco, 57 Tex. 635; Douglass et al. v. Town of Harrisville, 9 W. Va. 162, 27 Am. Rep. 548. See also, Borrowdale v. Board of County Commissioners, 23 N. M. 1, 163 Pac. 721, L. R. A. 1917E, 546.

It follows that the lower court was correct in directing the issue of a peremptory writ of mandamus, and that the order and judgment appealed from should be affirmed, and it is so ordered.

PARKER, C. J., and BRATTON, J., concur.