443 P.2d 850

STATE of New Mexico ex rel. CASTILLO
CORPORATION, a New Mexico
corporation, Relator,

v.

The NEW MEXICO STATE TAX COMMIS-
SION and Commissioners Ben Chavez,
Frank S. Ortiz and Anthony J. Albert, Re-
spondents.

No. 8657.

Supreme Court of New Mexico.

July 22, 1968.

Stephenson, Campbell & Olmsted, Charles D. Olmsted, Santa Fe, for relator.

Paul W. Robinson, Albuquerque, for respondents.

John B. Speer, Albuquerque, amicus curiae.

## OPINION

CARMODY, Justice.

We issued our alternative writ of mandamus, directing that the respondents perform the duties enjoined upon them by art. VIII, § 1, of the New Mexico Constitution and § 72–6–12.1, N.M.S.A.1953, by determining, fixing and promulgating a uniform assessment percentage ratio to be used in all counties of the State for the year 1968.

The question presented is whether there is a clear legal duty requiring the State Tax Commission to promulgate an order providing for a uniform assessment percentage ratio to be used in all counties for State purposes as to ad valorem taxes.

I.

Before considering the question as stated, we are faced with the problem of the standing of the relator to sue. Relator is a corporation located in Santa Fe, whose business consists of owning and operating an apartment complex. It is a taxpayer and subject to ad valorem taxes in the county. Relator requested the attorney

general to bring the instant action, but he declined to do so. Therefore, relator brought the case on behalf of itself and other ad valorem taxpayers in the State similarly situated.

In our opinion, this case involves a question of such unusually great public interest that we feel called upon to exercise the discretion vested in us and to determine the issue. Cf., State ex rel. Burg v. City of Albuquerque, 31 N.M. 576, 249 P. 242 (1926). In doing so, we are not unmindful of, nor do we in any sense overrule, our many decisions in which we refused to permit a taxpayer to raise constitutional questions in actions against state officials. See, among others, Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573 (1926); and State ex rel. Gomez v. Campbell, 75 N.M. 86, 400 P.2d 956 (1965).[1] It is worth mention that Asplund v. Hannett, supra, sought relief against misapplication of state funds and it was there suggested that a distinction should be made between the original jurisdiction of the supreme court and the jurisdiction of a district court where injunction was sought to vindicate a private right. We also note, although it involved the right to vote on a constitutional amendment at a special election, nevertheless, Hutcheson v. Gonzales, 41 N.M. 474, 71 P.2d 140 (1937) is analogous, in that it was there sought (as it is here) to require a state official to comply with a clear mandate of the constitution.

Certain other legal defenses have been made, which we will briefly dispose of prior to the consideration of the merits.

■■ It is urged that petitioners have failed to exhaust their administrative remedies under §§ 72–6–13.2 and 72–6–13.8, N.M.S.A.1953. These sections are not appli-cable to the instant situation, as they relate to review procedures affecting assessed valuations and equality of assessments within a county. That is not the question here. The fact that relator filed a petition with respondents, which was promptly denied, seeking to require them to perform their constitutional and statutory duties with respect to uniformity, did not make the above sections of the statute applicable, nor was it a prerequisite to the filing of this mandamus proceeding.

■ It is contended that the sovereign immunity doctrine is applicable to this case. We find such an argument completely without merit, having been answered in Harriett v. Lusk, 63 N.M. 383, 320 P.2d 738 (1958). This is not a suit against the State; it is a mandamus proceeding to require the performance of a duty plainly required under the constitution, i. e., to prescribe an assessment ratio so that property shall be uniformly assessed in proportion to its value.

■ It is argued that this action is premature and that petitioners should pay the tax under protest and thereafter file the necessary litigation. See, § 72–7–27 or § 72–5–4, N.M.S.A.1953. Such a contention has no merit under these facts. Although respondents rely on First National Bank of Raton v. McBride, 20 N.M. 381, 149 P. 353 (1915), we cannot agree that it is controlling under the facts here; to the contrary, Sandia Savings & Loan Ass'n v. Kleinheim, 74 N.M. 95, 391 P.2d 324 (1964) is persuasive authority justifying this proceeding. We are really not concerned with petitioners' taxes (whether they be large or small), but the whole statewide ad valorem tax system. Thus we do not believe the action is premature, nor

---

1. We recognize the trend, and probably the weight of authority, is generally to permit taxpayer actions as is exemplified by the recent opinion of the Supreme Court of the United States in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, decided June 10, 1968. But see, St. Clair v. Yonkers Raceway, Inc., 13 N.Y.2d 72, 242 N.Y.S.2d 43, 192 N.E. 2d 15 (1963), cert. denied 375 U.S. 970, 84 S.Ct. 488, 11 L.Ed.2d 417. See, generally, 3 Davis, Administrative Law Treatise, §§ 22.09–22.10 (1958), §§ 22.09–22.10 (1965 Supp.); Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv.L.Rev. 1265, 1276–1282 (1961); Comment, Taxpayers' Suits: A Survey and Summary, 69 Yale L.J. 895 (1960).

is there an adequate, speedy remedy at law. See, State ex rel. Stephens v. State Corporation Commission, 25 N.M. 32, 176 P. 866 (1918); Conklin v. Cunningham, 7 N.M. 445, 38 P. 170 (1894).

Respondents challenge the merit of the issue, relying on the "long-standing interpretation" by state officials. Implicit in this argument is the fact that state officials have, for years, known that there are inequalities or lack of uniformity and have done nothing about it. We do not believe this type of construction should be termed "long-standing interpretation"; it is, in essence, merely long-standing failure by respondents and their predecessors to require equalization as plainly required by the constitution and the legislative enactments at least since 1947. See, particularly, § 72-6-12(9) and (10), N.M.S.A.1953 (L.1947, ch. 208, § 6); § 72-6-12.1, N.M.S.A.1953 (being L.1955, ch. 152, § 2); §§ 72-2-21.1 to 21.8, N.M.S.A.1953 (1967 Pocket Supp.) (being L.1966, ch. 26, §§ 1-9); §§ 72-2-21.9 and 21.10, N.M.S.A.1953 (1967 Pocket Supp.) (being L.1967 (S.S.) ch. 3, §§ 1 and 2).

## II.

In approaching the real issue of the case, the constitutional provision and the statute which must be considered are:

"Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class. (As amended November 3, 1914.)" —Art. VIII, § 1, New Mexico Constitution.

"The state tax commission shall constitute and be the state board of equalization, and as such board of equalization shall require that all taxable tangible property be assessed uniformly in proportion to the value thereof. To the end that all taxable tangible property may be assessed and valued in accordance with article VIII, section 1 of the Constitution of the state of New Mexico, and in order to perform the duties imposed upon it by law, the state tax commission may promulgate all necessary rules and regulations, including standards of assessment, which rules and regulations shall be followed by the county assessors and the county boards of equalization in connection with the assessment and valuation of property for tax purposes."— Sec. 72-6-12.1, N.M.S.A.1953.

Currently, there is in progress what is proposed to be a uniform fair-market-value appraisal, for tax purposes, of all real property and improvements situate in each county of the State. At the time of the issuance of our alternative writ, the reappraisal was completed in four counties and apparently would be completed, in order to be used as a basis for 1968 ad valorem taxation, in nine other counties. Because of this reappraisal, the present difficulty is brought to a head: in the past, there have been varying ratios of assessed values to market values used in different counties for tax valuation purposes. These ratios have varied from $16\frac{2}{3}\%$ in the most populous county (Bernalillo) to $33\frac{1}{3}\%$ in a great many other counties, including Harding and Catron, the two least-populated counties in the State. The reappraisal has been completed in Bernalillo, Catron, De Baca and Guadalupe Counties, but the disparate ratios continue. Since the filing of the petition and the issuance of the alternative writ, the reappraisal has been completed in Santa Fe County, and we are advised that although the ratio formerly used in Santa Fe County was $33\frac{1}{3}\%$, it will, for the 1968 taxable year, be reduced to $25\%$.

The following hypothetical illustration may be of aid in understanding the problem: We assume three identical pieces of property, each of which has an appraised value of $10,000.00, located respectively in Bernalillo, Catron and Santa Fe Counties; in each of these three counties, the reappraisal has been completed, but the three assessors and the respective county boards of equalization utilize a different ratio of appraised value in order to compute ad valorem taxes; thus the assessed values in this hypothetical situation, but using the

ratios now actually in effect, would be as follows: Bernalillo County $1,600.00, Catron County $3,300.00, and Santa Fe County $2,500.00. The above is hypothetical, but serves to illustrate the lack of uniformity. When a fixed mill ratio for state purposes is levied against the different values, it is apparent that the Santa Fe County property will pay 50% more state tax than does the Bernalillo County property of the same value, and the Catron County property will pay 100% more than the Bernalillo County property and 33% more than the Santa Fe County property.

In any event, petitioners claim that the respondents have failed to perform the duties required by the constitution and the statute, in that they have permitted the various county boards of equalization and assessors to fix an assessment ratio as applied to the appraised values of the property in each county and that this assessed value is utilized as a basis for both the State's and the counties' proportion of the ad valorem tax levy. It is argued that, as a result, the assessment percentages or ratios are neither uniform nor equal; that property has not been assessed uniformly in proportion to its value; and that, as between properties of the same class, the State's portion of ad valorem taxes has not been equal and uniform despite the fact that the tax rate, or millage, is equal and uniform in all counties in the State.

In this litigation, we are not in any sense concerned with the uniformity or lack thereof within a county (see, Love v. Dunaway, 28 N.M. 557, 215 P. 822 (1923)) but only with the levy, for State purposes, of the ad valorem taxes.

In their answer and brief, respondents admit that serious inequalities exist, but take a position which might be termed "confession and excuse." The commission admits inequality, but seeks to excuse the lack of uniformity, stating that an order directing a uniform ratio would (1) probably discriminate against taxpayers in those counties where reappraisal has occurred and values raised, or (2) if ordered only as to counties where reappraisals had been completed, would discriminate between those counties and the counties where not yet completed, or (3) raise so many complicated and disruptive problems affecting budgets and revenues of the various political subdivisions that chaos would result. We fully recognize and appreciate all of these problems and many others, but the fact remains that the constitution and statutes fairly cry out for compliance. We do not believe that, after twenty-one years, there can be any justification in allowing additional delay because of any of the above reasons, or to await the completion of the reappraisal program.

■■■■■ Lack of complete statewide reappraisal compounds the problem. However, reappraisal cannot be relied upon as an excuse if respondents have a mandatory duty to achieve equal and uniform ad valorem taxes. Respondents, in admitting present lack of uniformity, assign various reasons therefor, including the rapid economic growth of Bernalillo County, with the result that, at least there as differing from other counties, values were based upon the selling price and this was more easily ascertainable because of the many real estate transfers. At oral argument, counsel for the respondents stated that the reappraisal would be completed in all counties of the State by 1971, and at that time the ratio would be made as uniform as possible. Respondents argue that it is not feasible for them to fix a uniform percentage ratio for use in the entire State *"at this time."* Admittedly, there are tremendous difficulties involved and it may very well be that if the respondents were to immediately announce a statewide ratio, it would cause more disorder and confusion than would be warranted. If the granting of our writ would work a public injury or embarrassment, or be prejudicial to the paramount public interest, we would be justified in refusing it. See, Switz v. Middletown Twp., 23 N.J. 580, 130 A.2d 15 (1957). However, we do not view the granting of the writ here to be fraught with such circumstances as to endanger the

public good. It appears that respondents are, in effect, urging that they have utilized their discretion to delay, because of the many problems involved. If there is a mandatory duty, delay in exercising it is just as much to be condemned as is the refusal to do the duty. We do not believe that our constitution or the statutes authorize the taxing authorities to procrastinate in making a required decision. The decision must be made, not merely delayed, and refusal to make it is not within the discretion of the respondents. Respondents fail to distinguish between refusing to decide and possibly deciding wrongly—only the latter involves discretion. We would not interfere with the valid exercise of discretion by a state official; the purpose of mandamus is to compel, not control. We do not say "how" the respondents should make taxes equal and uniform, but we do say they must make the necessary effort to achieve such uniformity. It is, of course, too much to expect that there will be absolute uniformity at any time (appraisals involve the human equation and therefore are simply not 100% accurate). Nevertheless, there must be a uniform percentage ratio, or some other means of equalization, so as to make uniform the State's share of ad valorem taxes. The manner by which it is done, we leave to the respondents; but act they must. See, Annot., 131 A.L.R. 360 at 368.

There is nothing in Skinner v. New Mexico State Tax Commission, 66 N.M. 221, 345 P.2d 750, 76 A.L.R.2d 1071 (1959), justifying any other result. Skinner involved a reappraisal program in one county only, and, as far as the court could determine, concerned a temporary inequality for not more than a year. The instant case, on the other hand, involves inequalities which, even according to the most hopeful estimate, would continue for approximately four years not to mention the fact that they have existed for many years past. The respondents have a constitutional and statutory duty to take the necessary action to require, so far as possible, equality and uniformity on a continuing basis.

Amicus curiae argues that assessments for ad valorem taxes must be on the basis of 100% of actual value. However, such a contention is not within the issues raised by the alternative writ and the response, and we decline to express any opinion on the question. Amicus must accept the case on the issues as raised by the parties, and cannot assume the functions of a party. State, ex rel. Burg v. City of Albuquerque, supra; and Montoya v. Moore, 77 N.M. 326, 422 P.2d 363 (1967).

We fully realize that if we were to direct that the respondents promulgate a uniform assessment percentage ratio for use in all counties of New Mexico for the year 1968, untold confusion and disruption would result. This is so, because the process of preparing tax schedules and assessments for ad valorem taxation is something that cannot be done overnight. Budgets are fixed in relation to the assessment rolls, ratios are set in order that the necessary taxes may be raised, and many other time-consuming official actions are involved, so that to require a change at this particular time in the tax year would, in all probability, result in utter chaos. This, of course, we cannot allow.

Therefore, it is our considered judgment that our peremptory writ of mandamus must issue, requiring respondents to determine, fix and promulgate a percentage ratio of the appraised value, to which the state levy shall be applied, so as to accomplish equality and uniformity upon subjects of taxation of the same class for use in all counties of the State with respect to ad valorem taxes to be levied for the year 1969 and to perform such duty annually thereafter. It follows that our alternative writ will be modified so as to be effective as to taxes to be levied for the year 1969 and thereafter, and, as modified, will be made permanent. The order will be effective forthwith, but, by delaying its operation, taxing officials will be given an

opportunity to place in operation such procedures as may be necessary for compliance therewith commencing with the tax year of 1969. It is so ordered.

CHAVEZ, C. J., and NOBLE, MOISE and COMPTON, JJ., concur.