This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37707

**LEA POWER PARTNERS, LLC,**

Protestant-Appellant/Cross-Appellee,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

Respondent-Appellee/Cross-Appellant,

**IN THE MATTER OF THE CONSOLIDATED PROTESTS TO STATE ASSESSED PROPERTY TAX BUREAU'S NOTICES OF PROPERTY VALUE FOR 2012 THROUGH 2016.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Gregory S. Shaffer, District Judge**

Brownstein Hyatt Farber Schreck, LLP
Harold D. Stratton, Jr.
Cassandra R. Malone
Debashree Nandy
Lorena B. Hutton
Albuquerque, NM

Norton Rose Fulbright US LLP
William T. Sullivan
San Antonio, TX

for Appellant

Hector H. Balderas, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**HANISEE, Chief Judge.**

**{1}**     This appeal and cross-appeal arise in response to an Administrative Hearing Officer's (AHO's) decision regarding the valuation of Lea Power Partners (LPP's) electric plant for property tax purposes. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     LPP, a wholesale electricity generator, operates the Hobbs Generating Facility (the Facility) in Hobbs, Lea County, New Mexico. The Facility delivers electricity into the Southwest Power Pool (SPP). The SPP is not a "capacity market," which means that the SPP does not guarantee any payments to LPP for its production of electricity at the Facility. In such scenarios, wholesale generators like LPP produce revenues by entering into private contracts with customers through power purchase agreements (PPAs) to secure compensation in exchange for having the capacity to produce or provide electricity.

**{3}**     In 2006, LPP negotiated and entered into a PPA (the PPA) with Southwest Public Service (SPS). Pursuant to the PPA, LPP agreed to sell to SPS all of the electric capacity and associated energy produced by the Facility for twenty-five years, beginning September 2008. Under the PPA, SPS is obligated to purchase all of the electric capacity and associated energy produced by the Facility and supply LPP with all the natural gas required to produce such electric capacity and associated energy. Significantly, the PPA guarantees that LPP receives annual revenue whether or not the Facility produces any electricity.

**{4}**     In 2012, LPP's owner initiated and completed the sale of LPP, including the Facility. During this time, LPP submitted its 2012 property tax return and received a notice of valuation from the New Mexico Property Tax Division (the NMPTD). Following receipt of the notice of valuation, LPP timely filed a protest of the NMPTD's 2012 valuation. After the sale of LPP, an accounting firm performed a purchase price allocation. The resulting report was not prepared for property tax purposes, but the accounting firm's purchase price allocation was relied upon by LPP in financial statements to determine the "tangible costs" of the Facility as related to property taxes.

**{5}**     In each of the years following the sale of LPP—2013, 2014, 2015, and 2016— LPP timely submitted property tax returns, the NMPTD sent LPP notices of valuation in response, and LPP timely filed protests to the notices of valuation. LPP's protests asserted that the property value of LPP—and crucially, the Facility—was significantly lower in each reported year than was reflected in the NMPTD's notices of valuation. In June 2016 the AHO consolidated LPP's filed protests for each of the 2012 through 2016 tax years. In June 2017 a protest hearing on the consolidated protests was held before the AHO. The AHO ultimately granted in part and denied in part LPP's protests, finding that: (1) the PPA is intangible property and is subject to neither taxation nor inclusion

within calculation of tangible property cost; (2) the tangible property costs were accurately reflected in KPMG's price allocation report as adopted in LPP's audited financial statements; (3) while the PPA is intangible property not subject to taxation, the PPA could be considered for purposes of determining whether LPP was entitled to a property tax deduction; and (4) partly because of the economic protection provided by the PPA, LPP was not entitled to any further property tax deductions. LPP and the New Mexico Taxation and Revenue Department (NMTRD) subsequently filed a joint motion in district court to certify the case to the Court of Appeals pursuant to Rule 1-074(S) NMRA, and the district court granted the motion finding that the case involves an issue of substantial public interest. Having accepted certification, this appeal and cross-appeal followed.

**DISCUSSION**

**{6}**     On appeal, LPP raises three arguments: (1) the AHO misinterpreted NMSA 1978, Section 7-36-29 (1975, amended 2016)[1] such that the PPA—intangible property—was erroneously included in the total value of the Facility used for property tax purposes and, consequently, LPP was denied tax deductions to which it was otherwise entitled; (2) the AHO's decision allowing the PPA to be considered in relation to deductions resulted in a violation of the Uniformity Clause of the New Mexico Constitution; and (3) the AHO improperly disregarded certain expert testimony and the AHO's consideration of expert testimony was arbitrary, capricious, not supported by substantial evidence, and not in accordance with the law.

**{7}**     On cross-appeal, NMTRD likewise raises three arguments: (1) the PPA is not intangible *property* but rather is an intangible *cost* and is therefore subject to property taxation; the AHO erred by relying on the cost of acquisition, rather than the cost of construction to determine LPP's tangible property costs under Section 7-36-29(B)(6); and (3) the AHO erred in setting aside the doctrine of administrative gloss by straying from long-standing NMTRD interpretation of statutes, including Section 7-36-29. We resolve each point of appeal, albeit in a different order than presented by parties in order to ease understanding.

**I.     Overview of Relevant Statutory and Administrative Code Provisions**

**{8}**     This case involves interpretation of provisions of the Property Tax Code. Before addressing the parties' arguments on appeal and cross appeal, we briefly outline the relevant statutes and provisions of the New Mexico Administrative Code. The Property Tax Code defines "property" as "tangible property, real or personal." NMSA 1978, § 7-35-2(J) (2018). Regulation 3.6.1.7(D) of the Administrative Code clarifies that the term "property" as defined by Section 7-35-2 "does not include intangible property[.]" 3.6.1.7(D) NMAC. Under Regulation 3.6.5.21(G) of the Administrative Code, intangible

---

[1] Section 7-36-29(B)(6) has been amended since application in this case. Although we apply the version of the statute applicable at the time, we note that the amendment to the statute would bear no application to the matters litigated herein.

property is not subject to property tax valuation because it is not included within the definition of "property." 3.6.5.21(G) NMAC.

{9}  Section 7-36-29 establishes the special method of valuation for property such as the Facility here. Under Section 7-36-29(A), "[a]ll property used for the generation, transmission or distribution of electric power or energy subject to valuation for property taxation purposes shall be valued in accordance with the provisions of this section." Section 7-36-29(C) provides three requirements for the valuation of an electric plant, the first two of which are at issue in this case:

> (1)  the department shall determine the tangible property cost of the electric plant;

> (2)  such tangible property cost shall then be reduced by the related accumulated provision for depreciation and any *other justifiable factors, including functional and economic obsolescence*, such as the limitation on the use of the property based on the available reserves committed to the property; and

> (3)  notwithstanding the foregoing determination of value for property taxation purposes, the value for property taxation purposes of an electric plant shall not be less than twenty percent of the tangible property cost of the electric plant.

(Emphasis added.) Section 7-36-29(B)(6) defines "tangible property cost" as:

> the actual cost of acquisition or construction of property, including additions, retirements, adjustments and transfers, but without deduction of related accumulated provision for depreciation, amortization or other purposes[.]

## II.  The PPA is Intangible Property Not Subject to Property Taxation

{10}  In support of its argument that the PPA is subject to property taxation, NMTRD contends: (1) the PPA cannot be considered intangible property because the PPA—a long-term contract—does not fit into the applicable statutory definition, and (2) that even if the PPA is considered to be intangible, it is an intangible *cost* rather than intangible *property*. Whether the PPA is tangible property is a question of law which we review de novo. *See Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806 (explaining that even in an appeal of an administrative decision, we review questions of law de novo).

{11}  NMTRD first argues that the PPA cannot be considered intangible property because it does not conform to the meaning of intangible property as set forth by case law and the Administrative Code. To support this proposition, NMTRD cites to *Cutter Flying Serv., Inc. v. Prop. Tax Dep't* in which intangible property was defined as "such

property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises." 1977-NMCA-105, ¶ 44, 91 N.M. 215, 572 P.2d 943 (Sutin, J. specially concurring) (internal quotation marks omitted). NMTRD similarly cites to the Administrative Code, which states that the term "property" as defined by Section 7-35-2 "does not include intangible property including, but not limited to, shares of stock, bonds, bills, notes, checks, drafts, bills of exchange, certificates of deposit, letters of credit and negotiable instruments." 3.6.1.7(D) NMAC.

**{12}** When interpreting language of the Administrative Code, we apply the rules of statutory construction. *AMREP Sw. Inc. v. Sandoval Cnty. Assessor*, 2012-NMCA-082, ¶ 9, 284 P.3d 1118. When presented with a question of statutory construction, "[w]e discern legislative intent by first looking at the plain meaning of the language of the statute, reading the provisions together to produce a harmonious whole." *Sacred Garden, Inc. v. N.M. Tax'n & Revenue Dep't*, ____-NMCA-___, ¶ 5, ___ P.3d ___ (No. A-1-CA-37142, Jan. 28, 2020) (omission, internal quotation marks, and citation omitted). Where the language of a statute—or the Administrative Code, in this case—is clear and unambiguous, we are "required to give effect to the statute's language and refrain from further interpretation[.]" *Chan v. Montoya*, 2011-NMCA-072, ¶ 6, 150 N.M. 44, 256 P.3d 987; *see also Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 ("We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions."). "Tax statutes, like any other statutes, are to be interpreted in accordance with the legislative intent and in a manner that will not render the statutes' application absurd, unreasonable, or unjust." *City of Eunice v. State Tax'n & Revenue Dep't*, 2014-NMCA-085, ¶ 8, 331 P.3d 986 (internal quotation marks and citation omitted).

**{13}** NMTRD does not argue that any portion of the language of the relevant section of the Administrative Code or related statute is ambiguous, therefore our analysis is driven by the plain meaning of the language used therein. NMTRD argues that "[i]ntangible property is limited to financial instruments and does not include long-term contracts" and that the PPA is not intangible property because it is not the type of "financial instrument" contemplated in *Cutter Flying Service, Inc.* and the Administrative Code. We disagree. Each relevant authority on this issue—*see* 1977-NMCA-105, 3.6.1.7(D) NMAC, and Section 7-36-29(C)(2)—uses the inclusive, non-exhaustive terms of "such as" and "including, but not limited to" in defining intangible property. We presume the choice of language in 3.6.1.7(D) NMAC to be intentional. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)); *State v. Strauch*, 2015-NMSC-009, ¶¶ 16, 35-36, 345 P.3d 317 (explaining that—when analyzing the plain meaning and relevant legislative intent—the broad, inclusive language of "every person, including" required an expansive, rather than narrow, interpretation of statutory applicability); *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 36, ___ P.3d ___ ("[W]hen the Legislature

includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." (internal quotation marks and citation omitted)). Here, under the words chosen by the Legislature, there is nothing that indicates exclusion of the PPA as intangible property within Section 7-39-29(C).

**{14}** Conceding that the PPA is an "intangible long-term contract," NMTRD next argues that the PPA is an intangible cost of LPP—rather than intangible property—and is therefore subject to property tax. Central to this argument is NMTRD's assertion that the PPA is a tangible cost under Section 7-36-29(B)(6). To support this assertion, NMTRD cites *Kerr-McGee Nuclear Corporation v. Property Tax Division of Taxation & Revenue Department*, 1980-NMCA-063, 95 N.M. 685, 625 P.2d 1202, for the proposition that intangible costs are subject to property tax "if the intangible costs are a necessary item of expenditure in the acquisition or construction of property." There, we considered whether certain costs—such as those associated with labor, engineer and geological analysis, utility bills, and equipment rental fees—fell within the relevant statutory definition of "tangible property cost." *Id.* ¶ 8. We held that such costs met the definition of "tangible property cost" because they were "necessary expense[s]" and "necessary items[s] of expenditure." *Id.* NMTRD fails to explain how the PPA—an intangible long-term contract—is a necessary item of expenditure, other than to claim that the PPA is "used or useful for the generation, transmission or distribution of electric power or energy" under Section 7-36-29(B)(2).

**{15}** To support its claim that the PPA is used or useful under the statute, NMTRD asserts that "[a]ll property that is 'used and useful' would include all tangible property and intangible costs that are not a financial instrument." NMTRD attempts to support this claim by citing to *Alto Village Services Corp. v. New Mexico Public Service Commission*, 1978-NMSC-085, ¶ 15, 92 N.M. 323, 587 P.2d 1334, where our Supreme Court considered whether water rights were included in utility base rates. NMTRD contends that *Alto* stands for the proposition that "water rights are included in original cost because water rights are "used and useful" in providing water utility service[,]" and therefore, "[j]ust as water rights are 'used and useful' in providing water utility service, the PPA is 'used and useful' for the generation, transmission or distribution of electric power." (Emphasis added.)

**{16}** We are unpersuaded by NMTRD's arguments and attempted case law support. Not only do *Kerr-McGee* and *Alto* deal with statutes distinct from the present case, but *Alto* does not stand for the proposition cited by NMTRD. Rather, in *Alto*, our Supreme Court did not decide whether the water rights were used and useful, reserving that question as a factual determination. 1978-NMSC-085, ¶ 15. NMTRD's arguments on this issue are generally unclear, undeveloped, and lacking meaningful support beyond NMTRD's own assertions. Further, NMTRD provides no analysis that might support its contention in this regard, and—in essence—asks that we simply summarily conclude that the PPA is taxable as a cost of LPP. Because we have "no duty to review an argument that is not adequately developed[,]" we decline to further consider such claims. *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701; *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining

to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim); *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{17}** To the extent NMTRD argues we should reexamine Section 7-36-29 in light of case law from other jurisdictions wherein intangible property has been included in valuations for property taxes, we decline to do so. The mere citation to out-of-state authority does little to explain how that authority pertains to New Mexico statutes that are not identical to those in other jurisdictions. To better develop such an argument, it is incumbent upon an appellant or cross-appellant to explain its argument within the context of both the out-of-state jurisdiction and New Mexico's own statutory framework, which is our primary source of relevant authority. Because NMTRD has failed to provide argument and analysis is beyond its own assertions of analogy, we rely on our statutory interpretation of the plain language of Section 7-36-29 and hold that the PPA is intangible property not subject to property taxation.

### III. The AHO Did Not Err in Determining the Tangible Property Costs of LPP Based on the Cost of Acquisition Rather Than the Cost of Construction

**{18}** NMTRD argues on cross-appeal that the AHO erred by relying on the cost of acquisition, rather than the cost of construction, to determine LPP's tangible property costs under Section 7-36-29(B)(6). Specifically, NMTRD contends that: (1) it determines whether to rely on the cost of construction or the cost of acquisition; (2) the actual cost of construction is known and there is no actual cost of acquisition on which the AHO can rely; and (3) reliance on the cost of acquisition is unconstitutional. Because NMTRD's argument requires us to interpret Section 7-36-29(B)(6), we review this issue de novo. *See Cordova v. Cline*, 2017-NMSC-020, ¶ 11, 396 P.3d 159 ("We review the interpretation of statutory language de novo.").

**{19}** In pertinent part, Section 7-36-29(B)(6) defines "tangible property cost" as "the actual cost of acquisition *or* construction of property[.]" (Emphasis added.). NMTRD accurately asserts that under Section 7-36-29(C)(1), it is required to determine the tangible property cost of an electric plant like the Facility, and that under Section 7-36-29(B)(6), it can rely on either the cost of acquisition or cost of construction in making such determination. Similarly, NMTRD accurately asserts that under Section 7-38-6, a determination of value by NMTRD is presumed to be correct. However, "[t]his presumption can be overcome by the taxpayer showing that the assessor did not follow the statutory provisions . . . or by presenting evidence tending to dispute the factual correctness of the valuation." *2727 San Pedro LLC v. Bernalillo Cnty. Assessor*, 2017-NMCA-008, ¶ 19, 389 P.3d 287; *see also State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 1968-NMSC-117, ¶ 16, 79 N.M. 357, 443 P.2d 850 (stating that the appellate

courts will not give persuasive weight to an agency's misapplication or misinterpretation of law).

**{20}** Here, we agree with the AHO that NMTRD's valuation of the Facility based on the cost of construction does not comport with the plain meaning of Section 7-36-29(B)(6), nor is such valuation consistent with evidence presented by expert witnesses, including NMTRD's own expert witness. "We must assume that the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears." *Varoz v. N.M. Bd. of Podiatry*, 1986-NMSC-051, ¶ 9, 104 N.M. 454, 722 P.2d 1176 (alteration, internal quotation marks, and citation omitted). As written, the Legislature chose to list acquisition first, followed by construction. *See* § 7-36-29(B)(6). A reasonable reading of Section 7-36-29(B)(6) provides that tangible property costs should first be based on the cost of acquisition, and then on the cost of construction only if the cost of acquisition is not known or available. Such a literal reading ensures that the tangible property cost will be based on the most current valuation point: if there is a sale of the property, the most current cost associated with that property will always be the acquisition cost. If there has been no sale of the property, there would be no acquisition cost, and the cost of construction would then be used to value the tangible property cost. It would be unreasonable to presume that the valuation of a property's tangible cost should be based on anything other than the most recent cost associated with the property. *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 31, 146 N.M. 453, 212 P.3d 341 ("In effectuating the intent of the Legislature, we must avoid any interpretations that would lead to absurd or unreasonable results."). As the AHO stated in its decision, the Legislature's crafting of the order of words in Section 7-36-29(B)(6)— which we presume to be intentional—"ensures that the most relevant data point is always the most recent value point" preventing either party involved in a property valuation to "pick and choose the cost of acquisition or the cost of construction that is the most favorable to their preferred valuation."

**{21}** Alongside this legal analysis, the AHO noted that the factual record of the case does not support NMTRD's contention that the cost of construction was the appropriate basis from which to value the Facility's tangible property cost. We agree. Expert witnesses for both parties independently concluded that it was appropriate to use LPP's audited financial statements as a starting point to determine the Facility's tangible property cost based on the cost of construction in 2012—the year in which the Facility was built—but then to apply the cost of acquisition to determine the tangible property cost in the relevant years thereafter. Based on the foregoing, we hold that the AHO did not err in determining the Facility's tangible property costs using the cost of acquisition.

## IV. The AHO Did Not Err by Considering the PPA in Determining Whether LPP Was Owed Deductions

**{22}** Turning now to LPP's arguments on appeal, LPP contends that the AHO incorrectly allowed experts to consider the PPA when determining whether LPP could claim any property tax deductions for the Facility. LPP asserts that the AHO misinterpreted and misapplied Section 7-36-29(C) by allowing the intangible PPA to be

considered by experts and treated as tangible property, thus denying LPP deductions it would otherwise be owed. LPP contends that if the AHO determined the PPA was intangible property, the PPA must necessarily be excluded from all valuation and consideration pursuant to the statute. We review this issue de novo. *Cordova*, 2017-NMSC-020, ¶ 11.

**{23}** The following two subsections of Section 7-36-29(C) are at issue in this case:

> (1)    [NMTRD] shall determine the tangible property cost of the electric plant; [and]
>
> (2)    such tangible property cost shall then be reduced by the related accumulated provision for depreciation and any *other justifiable factors, including functional and economic obsolescence*, such as the limitation on the use of the property based on the available reserves committed to the property[.]

(Emphasis added.). "Obsolescence is generally understood to be the process whereby property, because of causes other than physical deterioration, loses its economic usefulness to the taxpayer." *Anaconda Co. v. Prop. Tax Dep't*, 1979-NMCA-158, ¶ 11, 94 N.M. 202, 608 P.2d 514 (internal quotation marks and citation omitted). Obsolescence also refers to "an unexpected decline in the usefulness of a taxpayer's property due to external factors[.]" *Id.* ¶ 12. Any potential obsolescence "is best ascertained by the taxpayer" as they are most likely to be "fully cognizant of the actual usefulness, or productivity, of [the] property. It is the taxpayer's burden to show that [the] property has become or is becoming obsolete, and to prove the amount of obsolescence with reasonable certainty." *Id.* It follows that the taxpayer, here LPP, carries the burden of proving it is entitled to claimed deductions based on obsolescence. *See id.* ¶ 9 ("When a deduction is claimed, the taxpayer also has the burden of clearly establishing his right to it.").

**{24}** Section 7-36-29 does not define "other justifiable factors" beyond the inclusion of functional and economic obsolescence. "We give [statutory] language its ordinary and plain meaning unless the [L]egislature indicates a different interpretation is necessary." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61; *see Justifiable, Black's Law Dictionary* (11th ed. 2019) defines "justifiable" as "[l]egally or morally acceptable for one or more good reasons; excusable; defensible." *Merriam-Webster's Dictionary* defines "justifiable" as "capable of being justified," and defines "justify" as "to prove or show to be just, right, or reasonable." *Merriam–Webster Dictionary*, http://www.merriamwebster.com/dictionary/justify (last visited Dec. 28, 2020)*.*

**{25}** Here, under both the plain meaning of Section 7-36-29(C) and controlling case law, LPP carries the burden of justifying both that the Facility has become or is becoming obsolete and that, based on the level of obsolescence ascertained, LPP is entitled to a deduction for such obsolescence. *See Anaconda*, 1979-NMCA-158, ¶¶ 9,

12. After reviewing the record and parties' briefing, we agree with the AHO that LPP has not met this multi-layered burden. LPP contends that by excluding the PPA's value from the Facility's tangible property cost but simultaneously including the PPA's value in determining deductions for obsolescence, the AHO ultimately treats the intangible PPA as tangible property.

**{26}** However, there is nothing in the Property Tax Code that prohibits consideration of an intangible in determining whether a claimed deduction for obsolescence is justified. As the AHO aptly stated,

> While [NMTRD] may be prohibited by its own regulations from including an intangible in the valuation and thus the calculation of the tangible property cost [of the Facility], there is nothing in the Property Tax Code that prohibits consideration of an intangible in determining whether a claimed deduction for economic and functional obsolescence is justified. In fact, since by definition obsolescence looks towards unexpected decline in usefulness of the property, analysis of that concept under the 'other justifiable factors' deduction requires consideration of the operational and economic reality of the use of property.

Because legislative silence on an issue cannot alone provide a basis for resolution of this issue, we turn to an analysis of the factual record in this case, which we conclude supports the AHO's decision. *See Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 ("Legislative silence is at best a tenuous guide to determining legislative intent." (alterations, internal quotation marks, and citation omitted)).

**{27}** There is no evidence in this case that LPP was experiencing any unexpected or unplanned decline in the usefulness of the Facility property regarding the PPA. Our review of the record reveals that not only did LPP fail to meet their burden of proving both obsolescence and an entitlement to deductions based on such obsolescence, but certain evidence significantly undercuts LPP's position. Most notably, LPP's expert witness, Robert Reilly, testified that although he determined there to be functional and economic obsolescence of the Facility, both were "greatly mitigated" by the PPA. Further, Mr. Reilly's opinion and testimony regarding functional and economic obsolescence were premised on a hypothetical scenario of LPP functioning without the PPA, which does not represent the operational reality of LPP's Facility.

**{28}** The AHO's consideration of the PPA in relation to potential deductions owed to LPP does not mean the PPA was improperly considered as tangible property. Rather, as the AHO stated, "Considering the PPA as it relates to the justification for a further deduction does not mean that the value of the intangible PPA is added in any manner to the tangible property cost subject to property tax, which has already been calculated separately[.]" Because nothing in the Property Tax Code prohibits consideration of the PPA when determining whether an entity is entitled to deductions due to obsolescence, and because there is no evidence that LPP actually suffered the effects of obsolescence so as to warrant deductions, we hold that the AHO did not err in

considering the PPA in the context of ascertaining LPP's entitlement to further deductions. To hold otherwise would mean that an entity like LPP, functioning with a long-term contract such as a PPA, could not only benefit from a lower tangible property cost associated with a facility—and therefore a lower property tax—but could also benefit from claiming further deductions despite being insulated from economic harm under the PPA. We hold that where an intangible long-term contract insulates a taxpayer from obsolescence, it is not improper for such an intangible contract to be considered when determining whether the taxpayer is entitled to deductions.

## V.    The AHO's Consideration of Expert Testimony Was Proper

**{29}**    LPP contends that the AHO improperly disregarded testimony by Mr. Reilly, because the AHO's consideration of such expert testimony was arbitrary, capricious, not supported by substantial evidence, and not in accordance with the law. "[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**{30}**    Here, the AHO did not disregard any expert witness testimony. The AHO heard testimony from three different expert witnesses—one on behalf of LPP and two on behalf of NMTRD, each of whom the AHO found to be competent and well-qualified. In its decision, the AHO stated that the testimony provided by both parties' expert witnesses was "reliable, credible, material, and helpful in this matter." The AHO also stated that

> [d]espite repeated arguments and objections of both parties challenging credibility or attempting to strike the respective testimony or challenge the expert designation, the testimony, exhibits, and expert opinions of all three witnesses was admitted into the record, and remains material and pertinent to the issues in this case even if not fully accepted or adopted in this decision.

While the AHO determined that Mr. Reilly's testimony did not provide legal support for granting a deduction to LPP based on "other justifiable factors," the AHO's decision clarified that Mr. Reilly's testimony was "extremely detailed, knowledgeable, and thorough." The AHO also relied on Mr. Reilly's valuation numbers as related to the Facility's tangible property cost, including them in the findings of facts and conclusions of law. The AHO has discretion in weighing expert testimony and our review of the record indicates that the AHO's treatment of expert testimony was driven by the facts and circumstances of the case. Nothing in the AHO's treatment and regard of Mr. Reilly's testimony rises to an abuse of discretion and we hold that the AHO's consideration of expert testimony was proper.

## VI. The AHO's Decision Does Not Violate the New Mexico Constitution

**{31}** LPP argues that the AHO's decision allowing the PPA to be considered in relation to deductions resulted in a violation of the Uniformity Clause of the New Mexico Constitution. Specifically, LPP contends that the AHO's decision violated the Uniformity Clause because it differentiates between and disparately treats electric plants with a favorable PPA, like the Facility, from other electric plants that have either an unfavorable PPA or no PPA at all. We review questions of constitutional interpretation de novo. *See Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 11, 289 P.3d 1232.

**{32}** In pertinent part, the Uniformity Clause provides that "taxes levied upon *tangible* property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class." N.M. Const. art. VIII, § 1(A) (emphasis added). Here, the AHO explicitly did not consider the PPA as tangible property when determining the taxable property valuation for the Facility. LPP's argument is predicated on its assertion that the AHO erroneously considered the PPA in determining LPP's entitlement to deductions. Because we have already concluded that the AHO properly excluded the intangible PPA from its valuation of the Facility's tangible property cost and permissibly considered it in determining whether LPP is entitled to deductions, there is no constitutional error to assert and this issue is effectively rendered moot. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

## VII. The Doctrine of Administrative Gloss Does Not Require the AHO to Adhere to NMTRD's Interpretation of Section 7-36-29(B)(6)

**{33}** NMTRD argues that the AHO erroneously set aside the doctrine of administrative gloss by straying from long-standing NMTRD interpretation of statutes, including Section 7-36-29. *See Pub. Serv. Co. of N.M. v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-050, ¶ 41, 141 N.M. 520, 157 P.3d 85 ("In construing statutes and regulations, courts will give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. Such longstanding constructions, also known as 'administrative glosses,' constitute de facto agency policies that cannot be changed non-legislatively." (internal quotation marks and citation omitted)). NMTRD contends that it has routinely and historically included the value of long-term contracts, like the PPA, in property values under other statutes that are substantially similar to Section 7-36-29. However, NMTRD does not provide any evidence of its routine and historic consideration of other PPAs or similar long-term contracts in property values, citing only to the valuation statutes for other industries with different statutory schemes without providing any argument, explanation of their asserted correlation, or analysis. Without some factual support or legal analysis, we are unable to fully address this argument, since "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan*, 2011-NMCA-072, ¶ 9 (internal quotation marks and citation omitted)). We find this argument to be undeveloped and decline to

address it further. *See Corona*, 2014-NMCA-071, ¶ 28 ("This Court has no duty to review an argument that is not adequately developed."); *Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**CONCLUSION**

**{34}**   For these reasons, we affirm.

**{35}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**